TYLER ESTATE, Respondent, v. T. G. HOFFMAN, Interpleader, Appellant.

St. Louis Court of Appeals, January 4, 1910.

1. **CORPORATIONS: By-Laws: Powers of President.** A by-law of a corporation providing that "notes, drafts, acceptances and other pecuniary obligations in connection with the business of the company may be executed by the president" goes far toward expressly authorizing the president to borrow money for business purposes for the corporation, but can hardly be held to be express authority to him to confer liens on its property by way of mortgage or pledge.

2. ———: **Powers of President: How Created.** Actual authority of the president or general manager of a corporation to do acts of a particular kind or make a certain class of contracts, and among others to give a lien on its property by pledging or mortgaging it, may be established not only by a resolution of the board of directors, but by fair inference it had been conferred on him, drawn from the continued exercise of the authority, with the knowledge of the directors and without objection from them; and especially is this true if the officer who purported to act for the company had been allowed unhampered management of its affairs for a considerable period, and the money borrowed was used for the benefit of the company, with the knowledge of the directors.

3. ———: ———: ———: **Implied Authority: Estoppel.** A particular course of business pursued by the president of a corporation might create apparent authority to do acts which he had been inhibited from doing by resolution of the board of directors, and persons, in reliance on this appearance, might make contracts with him which would be binding, if they had no notice of the limitation of his powers; and a customary act by an official may be treated as valid and within the exercise of actual authority, not necessarily because the company is estopped to deny its validity from having invested the officer with apparent authority to perform it, but because the inference can be drawn that he was in truth authorized.

4. ———: ———: ———: **Estoppel: Common Usage.** The estoppel mode of validating the acts of an officer of a corporation, or the acts of an agent of any other principal, more often comes into operation when the officer or agent is invested with certain duties, which, according to common usage, carry with them the right to do some particular act or make contracts.

5. ———: ———: ———: **Evidence.** Where a corporate officer is allowed by the directors to pursue a particular line of acts, beyond those belonging to him by virtue of his office, or wield certain powers not commonly exercised by officials of the same class, this is evidence that such unusual powers had been allowed by the directors.

6. ———: ———: ———: **Execution of Chattel Mortgage.** The president of a corporation, who had been accustomed to manage all its financial affairs, borrow money and execute notes in its behalf and secure the loans by assignments of its property as collateral security, all of which acts were discussed by the board of directors and not objected to, but the fruits of which were accepted by them, had implied authority to secure a loan by executing a chattel mortgage, although he had never before executed a chattel mortgage in behalf of the company.

7. ———: ———: ———: ———: **Evidence: Admissibility.** Evidence tending to prove the president of a corporation constantly attended to all the financial affairs of the company, had borrowed money for it and assigned contracts held by the company as collateral security, "without formal authority or ratification, but which were known to the board of directors and had been discussed at their meetings without any action being taken" was admissible on the issue whether or not he had authority to pledge and mortgage the personal property of the company.

Appeal from St. Louis City Circuit Court.—*Hon. Virgil Rule,* Judge.

REVERSED AND REMANDED.

*Hugh D. McCorkle* for appellant.

(1) The attaching creditor, plaintiff, here stands in the shoes of the defendant, the Brooks Publishing Co., and, in the absence of any issue of fraudulent transfer of assets, it has no greater rights to the property attached than does the defendant. If the mortgage is valid as against the Brooks Publishing Co., it is, in the absence of such fraud, valid as against plaintiff. As there is no contention here that the mortgage was voluntary or made to defraud the creditors of defendant, plaintiff's rights against interpleader are no greater

than defendant's.  (2)  If a custom or usage of the defendant company existed permitting (and thereby impliedly authorizing its president to transact the business of the company in any way he deemed best, including the borrowing of money, the pledging, sale, or assignment of its advertising and other contracts, and generally doing whatever he deemed necessary to meet the exigencies of the business of the company, it would be as effective to establish the authority of the president to make this mortgage, as a by-law or resolution of the board of directors.  Bank v. Coal Co., 86 Mo. 12; Sparks v. Trans. Co., 104 Mo. 541; Roe v. Bank, 167 Mo. 406; State v. Silva, 130 Mo. 440; Moore v. Mfg. Co., 113 Mo. 98; State to use v. Heckart, 49 Mo. App. 280; Bambrick v. Campbell, 37 Mo. App. 460; Conover v. Ins. Co., 1 N. Y. 290; Daugherty v. Hunter, 54 Pa. St. 380; Merrell v. Consumers C. Co., 114 N. Y. 216; Bank v. Bank, 107 Mo. 133; Donham v. Hahn, 127 Mo. 439; Libby v. Bank, 99 Ill. 622; Bank v. Bank, 157 Ind. 10.  (3)  It follows that evidence tending to establish the existence of such a custom or usage of the company was entirely competent, and its rejection was error.  (4)  By general custom, of which our courts take judicial notice (Bambrick v. Campbell, 37 Mo. App. 460), presidents of corporations exercise certain general powers, and when he performs an act the presumption will be indulged that the act is legally done and binding upon the corporation. So far is this presumption indulged that proof of the proper execution of such an instrument by that officer will make a prima-facie case of authority to execute it. Bank v. Bank, 141 Ind. 352.  (5)  And if it is further shown that the president has been for a considerable period of time customarily exercising the broad powers of a general agent or manager of the corporation, and doing things on his own responsibility that are usually done in other corporations by the board of directors, or under authority of their resolutions, then any action done by him within the apparent scope of the authority

thus customarily exercised and arrogated by him, will be binding upon the corporation. Kirkpatrick v. Eastern M. & E. Co., 135 Fed. 146; Wire Co. v. Steel Co., 164 Ill. 149; Bank v. Bank, 141 Ind. 352. (6) If after the execution of the mortgage by the president of the Brooks Publishing Co., knowledge of same had been communicated to the other officers and directors of the corporation in the only way possible where board meetings by the directors had been entirely abandoned, and these officers and directors acquiesced in the same and took no steps to repudiate the alleged unauthorized act of the president, they will be held to have ratified the same, and this though no formal resolution to that effect was passed by the board of directors. Bank v. Bank, 107 Mo. 133; Bank v. Fricke, 75 Mo. 178; Campbell v. Pope, 96 Mo. 468; Choteau v. Allen, 70 Mo. 290; University v. Jordan, 29 Mo. 68. (7) Evidence tending to show that the directors and other officers of the Brooks Publishing Co., knew of the execution of the mortgage and took no steps to disaffirm it was competent and proper evidence and its rejection by the court was error. (8) If the Brooks Publishing Company received and retained the benefit of the money procured from interpleader on the faith of the mortgage, and is now retaining same, it is estopped from denying that its president had authority to make it. Such acceptance and retention of benefits acts as a conclusive ratification of the act by the corporation. In such case no formal ratification by the board of directors is necessary. St. Louis v. Gas Light Co., 70 Mo. 69; Winscott v. Inv. Co., 63 Mo. App. 367; Cass County v. Merc. & C. Co., 188 Mo. 1; Relfe v. Ins. Co., 10 Mo. App. 150; Chenoweth v. Express Co., 93 Mo. App. 185; Bank v. Fricke, 75 Mo. 178; Bank v. Badger L. Co., 54 Mo. App. 327, s. c., 60 Mo. App. 255; Brown v. Wright, 25 Mo. App. 54; also recognized in State ex rel. Schroeder v. Perkins, 90 Mo. 603. (9) And evidence tending to show that the

146 App.—33

Brooks Publishing Co. had received and retained the benefit of the money advanced by the interpleader on the faith of its mortgage was competent and proper evidence, and the court erred in rejecting same, and by ordering such evidence stricken out after same had been given. (10) It was immaterial whether or not the Brooks Publishing Co., or its other officers or directors knew at the time of the giving of the mortgage of the reception of the money by it, and it is immaterial that the president's act was unauthorized (if such was the case) in making such mortgage; it became its duty after learning of such act to repudiate the transaction and return the consideration to interpleader, and if it did not so act when the directors learned of the act, but kept and retained the consideration, then it is held to have conclusively ratified the action of its president, and it is estopped to assert the invalidity of such mortgage. Plaintiff, standing in the shoes of defendant, is subject to the same disability. Bank v. Lum. Co., 54 Mo. App. 327; also again before the court in 60 Mo. App. 255.

*Charles S. Reber* for respondent.

The judgment below is clearly right. The chattel mortgage relied on by interpleader was invalid. (a) It was unauthorized. No resolution of the board of directors authorizing it was ever passed. State ex rel. v. Perkins, 90 Mo. App. 603, and cases cited on p. 609. (b) It was not ratified. No resolution of the board of directors taking such action was adopted. State ex rel. v. Perkins, 90 Mo. App. 603; Paper Co. v. Printing Co., 144 Mo. 331. (c) It was the first mortgage ever attempted to be executed by the president of the corporation. Hence no apparent or ostensible authority was shown, no estoppel precluding the corporation from showing its actual invalidity. State v. Perkins, 90 Mo. App. 603. (d) Interpleader's offer of proof was rightly rejected by the court. The fact that the president of the

corporation, without authority and without objection from the board of directors, on two or more occasions pledged certain printing contracts as collateral, was no evidence of an apparent authority on his part to execute a chattel mortgage. Hefferman v. Boteler, 87 Mo. App. 316; State ex rel. v. Perkins, 90 Mo. App. 603. Besides, it was not shown that interpleader had any knowledge whatever of such transactions, and such knowledge on his part was absolutely necessary to work an estoppel against the corporation. Crane v. Gruenwald, 120 N. Y. 274; Harris v. Flume Co., 87 Cal. 526; Joy v. Vance, 104 Mich. 927; Bank v. Bank, 56 Neb. 149; Buskett v. Talcott, 96 N. Y. Supp. 714; Ludewieg v. Talcott, 93 N. Y. Supp. 621; Hefferman v. Boteler, 87 Mo. App. 317; Hackett v. Van Frank, 105 Mo. App. 384.

Defendant, the Brooks Publishing Company, was heretofore a corporation doing business in the city of St. Louis, to-wit, publishing "syndicate matter for magazines," and its customers were the publishers of magazines. J. W. Brooks was the promoter of the company and its president. The evidence tends to show he really had full control of the business of the company and managed it without interference by other officers or the directors. One director said: "He practically was the whole company himself; that really is the whole thing in a nutshell." In fact, prior to the transactions in controversy, there had been no meeting of the board of directors for about seven months, or later than March 12, 1907. The company's offices were in the building in St. Louis known as the Granite Building and belonging to the Tyler estate, the plaintiff corporation. On the fourth or fifth of October, 1907, the interpleader, T. G. Hoffman, whose office was in the same building, lent the Brooks Publishing Company $170 or $175, the amount being in dispute. The money was borrowed by Mr. Brooks as president of the com-

pany, but the testimony goes to show in the name of the company and for its benefit, and the money was used to discharge the company's obligations. The note given for the loan was dated October 5, 1907, fell due fifteen days after date, and contained a promise to pay the interpleader $175, for value received, at eight per cent per annum from date, compounded if not paid annually. The note was signed by the Brooks Publishing Company, by J. W. Brooks, President. On the same day, October 5, 1907, the Brooks Publishing Company, by J. W. Brooks, President, executed and delivered to Hoffman a chattel mortgage on certain personal property, to-wit: a filing case, three desks, two graphophones, one shaving machine, one library table, two flat-top desks, six office chairs, and two typewriters. This mortgage recited the execution of the note and purported to be given to secure it. The mortgage was duly filed in the recorder's office, so as to impart notice of a lien on the property described in it. Circumstances are in evidence from which respondent claims the conclusion may be drawn that the amount advanced by Hoffman on the loan was only $170, the note being made for $175 to cover interest or a bonus, and, therefore, the note was usurious and the mortgage given to secure it invalid against an attaching creditor. [R. S. 1899, sec. 3710; Marx v. Hart, 166 Mo. 503, 523.] On the contrary the testimony of Brooks and Hoffman went to prove $175 was advanced by Hoffman, five dollars being handed to Brooks to pay an urgent creditor on October 4, and a check for the balance the next day. About a week after this loan, Brooks borrowed fifty dollars more of Hoffman, for which he gave no note, but handed Hoffman a check of the Brooks Publishing Company for $52.50. The evidence would support different inferences as to whether this money was borrowed personally by Brooks, or in behalf of the publishing company; and also would support different inferences as to whether usurious interest was charged. No mortgage

was given to secure it, but in a few days after it was made, Brooks fell into difficulty about the rent of the offices occupied by the publishing company, and Hoffman's second loan having matured, Brooks carried to Hoffman's office two graphophones, the shaving machine and an Oliver typewriter, leaving them there in pledge for said loan. A little later the Tyler estate brought suit for rent and attached the Brooks Publishing Company's office furniture, including the property covered by the mortgage and the pledge to Hoffman, and said property having been seized under the writ of attachment, Hoffman filed an interplea claiming title to it under the mortgage and pledge. His claim was resisted by the Tyler estate on two grounds, as regards his mortgage, to-wit, that the loan secured was tainted with usury and the mortgage invalid as said; and that the instrument had been executed by Brooks as president of the corporation without authority from the directors. As to the title the interpleader held to part of the property by virtue of the contract of pledge, the attaching creditor asserted that the loan was likewise tainted with usury and the lien was invalid under the statute, and also that the money was lent to Brooks personally and not to the corporation. The case between the interpleader and respondent was tried before the court without a jury, and the court, after giving six declarations of law at the request of the interpleader, found the issues on the interplea in favor of respondent. We transcribe two of the declarations to indicate the theory of law declared:

"The court declares the law to be that if the court, sitting as a jury, believes and finds from the evidence that the officers, directors and stockholders of the Brooks Publishing Company enacted the by-law offered in evidence, and intended and interpreted the same to give to the president the right to execute notes, pledges, mortgages and otherwise deal with the credit and assets of the corporation, and permitted and assented to

his continued exercise of such right, then · . . . the creation of the debt and the execution of the mortgage and the creation of the pledge, if you find there was a pledge, involved in this suit, was legal and binding on the Brooks Publishing Company and on the plaintiff in this case.

"The court declares the law to be that if the court, sitting as a jury, believes and finds from the evidence that the defendant, the Brooks Publishing Company, constituted Jas. W. Brooks its chief business representative or agent, and permitted him, without objection, to exercise the full powers of the corporation in making contracts and business deals, contracting debts and obligations, borrowing money, and discounting or pledging its contracts, and that it was the usage of the company to permit said Brooks to do these things without the previous consent or authorization of the board of directors, or any formal ratification thereafter, then it impliedly authorized him, said Brooks, to make the debt and mortgage and to create the pledge, if you find there was a pledge, in controversy in this suit between plaintiff and T. G. Hoffman, the interpleader."

An appeal was taken by the interpleader.

GOODE, J. (after stating the facts).—As to the contention against the validity of the chattel mortgage and the pledge because of usury in the loans, suffice to say the evidence was not, in our opinion, conclusive one way or the other, but raised issues of fact for the court to determine as trier of the facts.

The main controversy on the appeal relates to the exclusion of evidence proffered by the interpleader upon the question of the authority of Brooks as president of the Brooks Publishing Company, to execute the mortgage on its property, or to pledge its property to secure loans made in its behalf. And right here we may say there was evidence conducing to show both loans were

made in the company's behalf, and it seems not to be questioned the mortgage loan was. The rejected offers of proof were evidence regarding the financial condition of the Brooks Publishing Company and the supply of money it had to carry on its business; what authority and power Brooks, as president, had been exercising in respect of financial transactions, such as the negotiation of loans and the assignment of property by way of pledge to secure loans, without express authority from or ratification of his acts by the board of directors. More specifically, the interpleader offered to prove Brooks constantly attended to all the financial affairs of the company, had borrowed money for it, and assigned advertising contracts held by the company as well as other contracts, as collateral security for loans he had made in its behalf. The general tenor of the offer of proof went to show he had exercised complete control of the business of the company, handled its funds, borrowed in its name when he wished, and on two or more occasions had assigned contracts under which money would become due to it, to persons, from whom, in its, behalf, he had borrowed. Interpleader's attorney conceded he had no proof to offer tending to show Brooks ever had executed a chattel mortgage in behalf of the company other than the one in question, but said he could show contracts representing valuable considerations had been put up as collateral security for loans and notes of the company; that these things had been done by the president "without formal authority or formal ratification, but they were all known to the board of directors and had been discussed at meetings of the board without action of any character being taken on them." Evidence to prove those alleged facts was, as said, excluded. Certain by-laws of the company were received in evidence, which authorized the president to receive and disburse money of the company, and to keep, or cause to be kept, accurate accounts of such disbursements, giving him authority to check on the

funds of the company in the bank, and saying "notes, drafts, acceptances and other pecuniary obligations in connection with the business of the company (may) be executed by the president." The last clause of the by-laws went far toward expressly empowering Brooks to borrow money for business purposes of his company, but hardly can be held to be express authority to him to confer liens on its property by way of mortgage or pledge. The offer of proof went to show he had pledged company property to secure loans and with the knowledge of the directors and their tacit, if not express, approval, after report and discussion of the acts. Hence the pledge to the interpleader was a contract of the same kind he had theretofore made with the board's approval. Actual authority in a president or general manager of a company to do acts of a particular kind, or make a certain class of contracts in its behalf, and among others to give a lien on its property by pledging or mortgaging it, may be established not only by a resolution of the board of directors, but by fair inference that it had been conferred on him, drawn from continued exercise of the authority with the knowledge of the directors and without objection from them. And especially is this true if the officer who purported to act for the company had been allowed unhampered management of its affairs for a considerable period, and the money borrowed was used for the benefit of the company, to the knowledge of the directors. [First Nat. Bank v. Mining Co., 89 Fed. 439; Id., 95 Fed. 23; Sherman, etc., Co. v. Swigart, 43 Kas. 292; Nat. State Bank v. Fork, etc., Co., 157 Ind. 10; Moore v. Gaus & Sons Mfg. Co., 113 Mo. 98, 106.] Some vagueness is detectible in the books regarding whether this implied, or, as it may be called more properly, inferred authority, can be availed of by a person with whom a corporation official makes a contract, unless the person dealt with knew of the previous similar acts by the official and relied on them, as showing authority in the official;

that is, on the appearance of authority with which the latter had been invested and which he had been held out to the world as possessing, by a course of conduct he had pursued and the company had tolerated. It is contended for respondent in the present case there was no proof, or offer to prove, Hoffman knew of a course of business pursued by Brooks in respect of borrowing money for the company and transferring its property as security for the loans. Therefore it is argued Hoffman is not entitled to the benefit of any appearance of authority created by prior transactions. No doubt such a course of business might create apparent authority to do acts which, in point of fact, the official had been inhibited from doing by resolution of the directors; and persons in reliance on this appearance might make contracts with the official which would be binding, if they had no notice of the limitation of his powers. [Empire, etc., Cattle Co. v. Railroad, 135 Fed. 135, 150.] But the law goes further. Actual authority to a corporation officer to do acts he is accustomed to do with the knowledge of the company may be implied from that method of management. Hence a customary act by an official may be treated as valid and within the exercise of an actual authority, not necessarily because the company is estopped to deny its validity from having invested the officer with apparent authority to perform it, but because the inference can be drawn that he was, in truth, authorized. The estoppel mode of validating the acts of an officer of a corporation, or the acts of an agent of any other principal, more often comes into operation when the officer or agent is invested with certain duties, which, according to common usage, carry with them the right to do some particular act or make contracts. For instance, if a banking company appoints a person cashier, he has apparent authority to do whatever bank cashiers are accustomed to do; and those dealing with him may take for granted he has such authority, even though, in fact, it has been expressly

withheld from him, unless they have reasonable grounds
to believe it has been withheld.    [Lawson, Usages &
Customs, sec. 65, et seq.; 4 Thompson, Corporations,
secs. 4744, 4877.]    But numerous authorities favor the
proposition that where a corporate officer has been al-
lowed by the directors of a company to pursue a par-
ticular line of acts, beyond those belonging to him by
virtue of his office, or wield certain powers not com-
monly exercised by officials of the same class, this is
evidence that such unusual powers had been allowed
by the directors.    [4 Thompson, secs. 4746, 4881 et seq.;
Clark, Corporations, 481; Bank v. Coal Co., 86 Mo. 125,
139; Sparks v. Transfer Co., 104 Mo. 531, 539; Cheno-
weth v. Express Co., 93 Mo. App. 185, 199; Chambers
v. Lancaster, 160 N. Y. 342, 349; Hoshannon, etc., Co.
v. Sloan, 109 Pa. 352.]    That doctrine is palpably
sound; for long acquiescence by the directors of a com-
pany in a line of conduct pursued by an official, and
particularly a chief official, certainly has a tendency to
prove they regard him as acting within  his authority;
otherwise it is fair to premise they would check him.
The probabilities and the law at this point are the same
as between a company and its officials as they are be-
tween a principal and his agent.    If the principal per-
mits the agent to exercise certain powers continually,
it is reasonable to imply authority to exercise them,
as principals usually protest against such conduct if
opposed to their wish.

It is said as regards the validity of the mortgage
in present dispute, it was conceded Brooks had never
before executed a mortgage in behalf of the company,
and therefore it follows he had been invested with no
authority by usage to execute one.    This is too narrow
a view.    If he had been accustomed to manage all the
financial affairs of the company, borrow money and
execute notes in its behalf, and secure the loans by as-
signments of property as collateral security, and the
board knew of and discussed those doings and did not

object to them, but accepted their fruits, we think this impliedly conferred power on him to secure a loan, not only by assignments of property in the form of pledges, as he had theretofore done, but also in the form of a chattel mortgage. The effect of security in the two forms would be the same practically so far as the company's rights and obligations were concerned. The case of State ex rel. v. Perkins, 90 Mo. 603, which is relied on by respondent's counsel as an authority against the right of Brooks to execute the mortgage, is, in its facts, too unlike the case at bar to be in point. There, no habit of the president to borrow money in the name of the company or control its business with the knowledge of the directors and without express authority from them was shown. It is true the opinion said that as far as appeared, the mortgage or deed of trust in question was the first act of the kind the president of the company had ever attempted, and the security therefor stood unsupported by any implied authority to execute it. But that remark must be understood with reference to the facts of the case, which were, as said, that no general management of the business and financial affairs of the company by its president and the borrowing of money and securing it on company property was shown. The opinion did not mean to say if such a course of business had been pursued, the chattel mortgage security would fail simply because no instrument of the identical kind had been executed by the president before, even if analogous ones had.

The declarations of law given by the court rather look in conflict with the rulings on the evidence, particularly the second one.

For the exclusion of the offered evidence, the judgment will be reversed and the cause remanded. All concur.