SOUTH FLORIDA CITRUS LAND COMPANY, A CORPORATION, *Appellant,* v. WALTER WALDIN, *Appellee.*

1.  Where two persons own all the stock of a corporation except one shared organized, among other purposes, to deal in lands, and those two persons and the party who owns the one share constitute the board of directors, and one of the first named is the president and the other is the secretary and treasurer, and these two are the active directors, as well as president and secretary, and where there is a provision in the by-laws that two directors shall constitute a quorum for the transaction of business at any meeting, and that the directors shall have entire management, control and direction of the company, and may do all things not repugnant to law or the charter, and that the president shall sign all contracts and conveyances made by the company, and the secretary shall countersign all such contracts and conveyances, and where it appears that the president and secretary (being also the two active directors) were in the habit of making sales and conveyances without any special resolution or order of themselves as directors, and of dealing with the property of the corporation as though their power of disposition was unqualified, a plea by such a corporation to a bill for the specific performance of a contract made by the president and secretary for the sale of land, to the effect that the contract was void because not made by authority of any resolution of the board of directors as provided by the by-laws, even though true in point of fact, will not avail to defeat the prayer of the bill for specific performance.

2.  The rule or fiction of law that a corporation is a separate entity, separate and apart from its members, does not always obtain in a court of equity where to do so would result in enabling the shareholders of a private corporation who substantially own and control a corporation and its officers, who are those identical shareholders, to perpetuate frauds upon those who deal with them.

This case was decided by Division B.

Appeal from the Circuit Court for Dade County.

The facts in the case are stated in the opinion of the court.'

*Geo. M. Robbins* and *H. F. Atkinson,* for Appellant;

*R. B. Gautier* and *Hudson & Boggs,* for Appellees.

HOCKER, J.—This case was before this court at the January Term, 1910. The opinion of the court is found in 59 Fla., 606, 51 South. Rep., 554. The substance of the bill is therein stated and it was held, among other things, that it made out a case for specific performance, good. against general demurrer. On the 27th day of January, 1908, the defendant corporation filed a plea in which it is alleged as a defense that the contract described in the bill the specific performance of which was sought "is not the act or deed of this defendant, that said paper was executed without any authority from its board of directors, and that there is no provision of the charter or by-laws of this defendant which authorized the execution of said instrument by the officers whose names appear thereto without specific authority from the board of directors, and that it was the duty of complainant to inquire and ascertain the authority of the agents who signed said instrument before accepting the same and had he done so he would have ascertained that they had not received or been invested with such authority." These matters are pleaded as a defense to the whole bill. A replication was filed to this plea, and an examiner was appointed to take the testimony. Upon a hearing the Circuit Judge held that the plea was insufficient and unsustained by the proofs, and overruled the same.

Afterwards, upon a hearing upon the bill as amended and the answer thereto, the court rendered a final decree

in favor of the complainant requiring a specific perform-ance of the option contract by the defendant subject to a mortgage on the lands involved; that the defendant corpo-ration execute a good and sufficient warranty deed of the premises to said complainant, subject to the aforesaid mortgage, to be approved by the court; that upon the delivery of such deed the clerk pay over the purchase money for the lands, and that defendant pay the costs. An appeal was taken from this decree.

The only assignment argued here is based on the ruling of the circuit judge upon the plea.

It appears from the testimony taken that Henry E. Tuttle, Carrie R. Tuttle, his wife, of Miami, Florida, and Carrie H. Fowler of Havana, Cuba, on the 11th day of January, 1907, formed a Florida Corporation under the name of South Florida Citrus Land Company, with a capital stock of $100,000.00, for the purpose of buying, selling, renting, leasing and otherwise acquiring and dis-posing of real estate and personal property; of selling, mortgaging or otherwise pledging or disposing of any of the company's real estate or personal property as security for any debts of the corporation, borrowing money, and securing the payment of the same in any manner permit-ted by law to private persons; loaning money on chattel mortgage or real estate security, buying and selling real estate mortgages and secured promissory notes, and other negotiable paper; buying, renting and improving real estate for others, either on contract, or for a commission to execute and deliver deeds, mortgages, contracts, bonds for title, agreements of sale, releases, satisfactions, and all papers necessary to carry out the powers of the cor-poration, &c.

It is provided in the articles of incorporation that the capital stock of $100,000.00 shall be payable at the option

·of the corporation in cash or services, or property real or personal at a just valuation to be fixed by the board of directors at a meeting to be called for the purpose. It is also therein provided that the names of the officers and directors who are to conduct the business of the corporation until those elected at the first election shall be qualified are Henry E. Tuttle, President; Carrie R. Tuttle, Treasurer; and Carrie H. Fowler, Secretary; and Henry E. Tuttle, Carrie R. Tuttle and Carrie H. Fowler shall constitute the board of directors. The organization and first annual meeting of the stockholders shall be held on the first Monday in March, A. D. 1907, in the city of Mi· ami, and on the same day, each annual meeting of the stockholders thereafter. The 7th Article states the names and residences of the incorporators and the amount of capital stock subscribed for, as follows: Henry E. Tuttle, Miami, Fla., 849 shares; Carrie R. Tuttle, Miami, Fla., 150 shares; Carrie H. Fowler, Havana, Cuba, 1 share.

The first stockholders meeting was held in the city of Miami, Florida, at the residence of Henry E. Tuttle, on Monday, the 4th day of March, 1907. There were present at said meeting Henry E. Tuttle, representing his 849 shares; Carrie R. Tuttle, representing her 150 shares, and Carrie R. Tuttle, as proxy for Carrie H. Fowler, of Havana, Cuba, representing 1 share. It appears that all this stock was paid for with real estate. At this meeting Henry E. Tuttle was unanimously elected President, and Carrie R. Tuttle, his wife, Secretary and Treasurer, and Henry E. Tuttle, Carrie R. Tuttle and Carrie H. Fowler directors of said corporation. There does not appear that any other stockhelders' meeting was ever held. In fact, it affirmatively appears there never was any other stockholders' meeting.

On the same day, viz., 4th of March, 1907, the minutes

49 Vol. 61

show there was held the first and only meeting of the board of directors. The meeting was held at the residence of Henry E. Tuttle, and he and his wife were the only directors present; that they being a majority of the board of directors, proceeded to accept the charter, to receipt for the lands given by the three stockholders for stock, to issue the stock, and to adopt by-laws.

Among other things provided in the by-laws are provisions for holding special meetings of the stockholders at the discretion of the President or Board of Directors, or upon the written request of three stockholders, and notce thereof shall be given in the manner required for the call of the annual meeting—a provision that the board of directors shall by themselves and by officers and committees appointed by them, have the entire management, control and direction of the company, and may do all things not repugnant to law or the charter, which they deem fit to carry into effect the powers granted by the act under which this corporation is organized—provisions for regular and special meetings—that two directors shall constitute a quorum for the transaction of business at any meeting. There are provisions that the President shall sign all contracts and conveyances made by the company, and have general supervision of the affairs of the company; that the Secretary shall keep full records of all meetings of the stockholders and directors, shall countersign all contracts and conveyances signed by the President, and shall keep in proper books, true and accurate records of the same. It appears that there has been one meeting of the stockholders, and one of the directors, viz., on March 4th, 1907, and at that meeting of the directors, the two directors present constituting a quorum ratified and confirmed four deeds executed by them as President and Secretary, before the corporation was organized or

its charter and by-laws adopted. It also appears that the defendant corporation has executed one mortgage, twelve warranty deeds, and one land contract since the 4th of March, 1907, and it does not appear from the minutes that the officers were expressly directed or authorized to execute these instruments, or that they have ever been ratified or confirmed at any meeting of the stockholders. In fact, the contrary appears from the testimony of Mr. Tuttle. It further appears from the answer of the defendant corporation, that it undertook to defeat complainant's prayer for specific performance, by showing that before complainant's contract was made the defendant corporation had conveyed the lands for which complainant is suing, by warranty deed to one W. H. Cooper, and yet it does not appear that the officers who executed this deed were ever authorized to execute by the directors at any regular or special meeting, or that it has ever been ratified or confirmed at any such meeting.

This course of conduct by the two persons who owned all the stock except one share, who constituted a majority of the Board of Directors, and who were the President and Secretary of the corporation, who were the only persons who actually participated either in the organization of the corporation or its management shows clearly that it was their intention to use the corporation fiction to protect themselves and their corporation against such contracts and acts, as they might not choose to abide by. Mr. Tuttle as President of the defendant corporation signed the name of the corporation and attached its seal to the contract upon which complainant sues and Mrs Tuttle attested it as Secretary. They thereby affirmed that they had authority to make the contract; authority which as the two acting directors, they had ample power to confer on themselves as President and Secretary and

could have placed in the minutes as easily as they signed the contract. Mr. Tuttle states in his testimony that no one has authorized the repudiation of complainant's contract; that he and Mrs. Tuttle discussed it, but did not make it a matter of record.

The question to be decided is whether the court erred in overruling the plea. This question is not answered by the assertion that the plea is proven, inasmuch as the minutes do not affirmatively show that authority was given the President and Secretary to execute the contract sued on. By rule 50 of the rules of the circuit court in equity it is provided: "The plaintiff may set down the demurrer or plea to be argued or he may take issue on the plea. If upon an issue the facts stated in the plea be determined for the defendant, the facts shall avail him as far as in law and equity they ought to avail him." In 2 Bates Fed. Eqr. Proc., section 300, this rule is explained to mean what its plain language ordinarily means. See Theisen v. Whiddon, 60. Fla., 372.

The rule or fiction of law that a corporation is a separate entity, separate and apart from its members, does not always obtain in a court of equity where to do so would result in enabling the shareholders of a private corporation who substaintially own and control a corporation and its officers who are those identical shareholders to perpetuate frauds upon those who deal with them. 1 Morawetz on Private Corp. (2nd Ed.), section 227. In applying the doctrine of agency to the acts of the officers of a corporation Morawetz says: "It is settled that a person dealing with an agent in good faith within the scope of his apparent powers is always, in the absence of some notice to the contrary, entitled to assume that the purpose for which the agent acted was one for which he had authority to act. If this were not the rule, it

would be impossible to deal with an agent in safety. So it has been held that, if the directors of a corporation have authority to borrow money upon obtaining a resolution at a general meeting, a party dealing with the directors in good faith and without notice will be entitled to assume that a proper resolution has been obtained." 2 Morawetz on Private Corp. (2nd Ed.), section 588. Again the same author says in section 590: "in applying these principles to acts performed by agents of a corporation, it is of course necessary to consider the peculiar scope and character of the powers of such agents. Thus the powers of the majority, at a meeting of the shareholders, or of the board of directors of a corporation, are extremely broad and general, and are usually limited only by the terms of the company's charter. Within the limits fixed by the charter, the majority may for many purposes be treated as the corporation." Again this author says in section 593: "It is plain that a person who has dealt with an agent of a corporation in good faith within the scope of the apparent powers conferred upon him by the company is not affected by secret instructions limiting these apparent powers. The same is usually true of restrictions upon the apparent powers of the agents of a corporation by the company's by-laws. There is no general rule compelling persons dealing with a corporation, at their peril, to take notice of its by-laws." Again the same author says in section 594: "A person dealing with such agent is clearly not affected by the by-laws in the absence of actual or constructive notice thereof. But even where actual notice of the by-law is brought home to the person dealing with the agent, it does not follow that he must at his peril ascertain whether the by-law has been complied with. If the by-law is merely a provision for the internal government of the corporation, and prescribes formalities to be observed

in the action of the company's agents, due compliance with the by-law may usually be assumed, in the absence of notice to the contrary." As instances of the way in which courts deal with the acts of those who control a corporation which if sustained would constitute fraud, see Des Moines Gas Co. v. West, 50 Iowa 16, text 25; State v. Standard Oil Co., 49 Oh. St. 137, text 177, 30 N. E. Rep. 279. As to the application of the doctrine of estoppel, when one deals with the agent of a corporation within the apparent scope of his authority, see Clark & Marshall on Private Corp., sections 707, 708.

There is no reason for multiplying authorities in this case. There is nothing in the charter of this corporation which would put any one on notice that the President and Secretary did not have authority to execute the contract sued on. There is no proof that the complainant had actual notice of the fact that the directors as such had not authorized the contract. In the absence of such notice the complainant might well assume that the President and Secretary did not intend to perpetrate a fraud on him, and that they had the authority they pretended to have, by making the contract.

The decree of the circuit judge is affirmed, at the cost of the appellant.

TAYLOR and PARKHILL, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.