EDWARDS, RESPONDENT, v. PLAINS LIGHT & WATER CO.,
APPELLANT.

(No. 3,411.)

(Submitted September 19, 1914. Decided October 26, 1914.)

[143 Pac. 962.]

*Contracts of Employment—Breach—Evidence—Corporations—
Board of Directors—Officers—Powers—Measure of Damages.*

Contract of Employment—Evidence—Sufficiency.
1.   Evidence, including letters interchanged between the president of
defendant corporation, signed by him personally, and plaintiff, consid-
ered in the light of the circumstances under which they were written,
*held* to show a contract of employment for a certain term, for the
breach of which plaintiff was entitled to recover.

[As to contracts for permanent employment, see note in 51 Am. St.
Rep. 301.]

Same—Corporations—Acts of President—When Deemed Act of Principal.
2.   Where the evidence showed that it was the intention of the presi-
dent of a corporation the stock of which, with the exception of three
shares for which the holders paid nothing, was owned by himself, to
bind the company by letters written by him personally and relied on
by plaintiff to establish a contract of employment, it became bound,
under section 5449, Revised Codes, as fully as if a formal contract had
thereafter been executed in its name.

[As to authority of general manager or agent of corporation to hire
employees, see note in Ann. Cas. 1914B, 831.]

Same—Validity—Estoppel.
3.   The by-laws of defendant corporation provided, *inter alia,* that its
president could execute contracts only upon approval by the board of
directors.   That officer had been permitted by the board—the members
of which were his employees in other enterprises and held a share of
stock each for which they had paid nothing—to exercise all its powers,
in the management of the business, the board remaining inactive.  *Held*
that the president, under such circumstances, at the time he entered
into the contract of employment was vested with the powers of the
board, and the corporation was thereafter estopped to question the
validity of his act.

[As to authority of officer to represent corporation as inferred from
manner in which he has been permitted to act, see note in Ann. Cas.
1913D, 646.   And see note in Ann. Cas. 1912D, 296.]

Same—Corporations—Duties and Powers of Directors and Officers.
4.   Though section 3836, Revised Codes, provides that the directors
must perform the duties enjoined upon them by statute and the by-laws
of their corporation, *etc.,* its general executive officer may, specifically
or by implication, be authorized by them to conduct its business under
their directions.

[As to necessity of action by directors to validate corporate act, see
note in Ann. Cas. 1912C, 300.]

Same—Measure of Damages.

5.    The measure of damages in an action to recover for the breach of a contract of employment is the amount plaintiff would have earned had he remained in the employment, at the rate stipulated, to the end of the term—even though trial is had before expiration of it—less any amount he received for services rendered to others or might have received by the exercise of diligence to secure profitable employment after his discharge.

[As to what is contract for personal services within the rule that damages for breach may be mitigated by earnings of employee in other employment, see note in Ann. Cas. 1914A, 810.]

*Appeal from District Court, Sanders County; R. Lee Mc-Cullough, Judge.*

ACTION by C. O. Edwards against the Plains Light & Water Company. Judgment for plaintiff. Defendant appeals from the judgment and an order denying its motion for a new trial.

Cause submitted on briefs of counsel.

*Messrs. Galen & Mettler* and *Mr. I. R. Blaisdell,* for Appellant.

The president has no power to bind the corporation, but his power as an agent of the corporation must be founded on the organic law thereof, or on a delegation of authority from the board of directors, and his duties arising from his office as president are confined to presiding, and voting as a director. (*Ex parte Rickey,* 31 Nev. 82, 135 Am. St. Rep. 651, 100 Pac. 134; *Black* v. *Harrison Home Co.,* 155 Cal. 121, 99 Pac. 494.) The manager of a corporation held not to have had authority to bind the corporation by a contract to employ a clerk for a specified term. (*Francis* v. *Spokane Am. Athletic Club,* 54 Wash. 188, 102 Pac. 1032.) Acts and declarations of a director of a corporation in his individual right are not binding on the corporation, unless he has been appointed its agent, or his acts or declarations have been ratified. (*Guillaume* v. *K. S. D. Fruit Land Co.,* 48 Or. 400, 86 Pac. 883, 88 Pac. 586.) Proof that a person is the secretary of a corporation is not sufficient alone to establish his authority to make contracts for the corporation. (*Danaldson* v. *Orchard Crude Oil Co.,* 6 Cal. App. 641, 92 Pac.

1046.)  A corporation is not liable on an agreement made by one or two of its trustees in the absence of authority to bind the corporation having been delegated to such trustees, or ratification of the agreement by the corporation. (*Wagner* v. *St. Peter's Hospital*, 32 Mont. 206, 79 Pac. 1054.)  The secretary and general manager of a mining corporation has no implied power by virtue of his office to bind the corporation by a contract for medical attendance on injured employees. (*Spelman* v. *Gold Coin M. & M. Co.*, 26 Mont. 76, 91 Am. St. Rep. 402, 55 L. R. A. 640, 66 Pac. 597.)  The president of a corporation has no power as such to employ a general business managing agent without the consent of the directors. (*Vogel* v. *St. Louis Museum etc. Co.*, 8 Mo. App. 587.)  An agent of a corporation cannot bind his principal by a contract of employment unless authority to make such a contract was conferred upon him by the board of directors. (*Wm. Tarr Co.* v. *Kimbrough*, 17 Ky. Law Rep. 1284, 34 S. W. 528.)  The president has no general authority to contract for the corporation. (*St. Claire* v. *Rutledge*, 115 Wis. 583, 95 Am. St. Rep. 964, 92 N. W. 234; *Stanley* v. *Sheffield Land etc. Co.*, 83 Ala. 260, 4 South. 34; *Varney* v. *Hutchinson Lumber Co.*, 70 W. Va. 169, 73 S. E. 321; *Templin* v. *Chicago etc. Ry. Co.*, 73 Iowa, 548, 35 N. W. 634; *Schmeling* v. *Rockford etc. Co.*, 154 Ill. App. 308; *Griffith* v. *Chicago etc. Ry. Co.*, 74 Iowa, 85, 36 N. W. 901; *MacBean* v. *Irvine*, 7 Ky. 17; *Mt. Sterling etc. Co.* v. *Looney*, 58 Ky. 550, 71 Am. Dec. 491.)  Contract of corporation must be authorized by the board of directors. (*Alta Silver Min. Co.* v. *Alta Placer M. Co.*, 78 Cal. 629, 21 Pac. 373.)  An agreement of the president of a private corporation will not be evidence against the corporation unless it is shown to be within the scope of his authority. (*Farmers' Bank* v. *McKee*, 2 Pa. 318; *Potts etc. Liquor Co.* v. *Potts*, 135 Ga. 451, 69 S. E. 734.)

The mere fact that plaintiff was employed by defendant corporation, and was paid by it from month to month for his services, is not proof that it made any contract with plaintiff to employ him for three years, or any other specific period of

time; nor is it proof that defendant corporation ratified any contract which J. A. McGowan might have made with the plaintiff; because there is no proof that any other officer or director of defendant corporation except J. A. McGowan had any knowledge of the terms of any such agreement.

The board of directors of a corporation cannot ratify a contract made by its general manager without authority, unless the board has full knowledge of the terms of the contract. (*Lincoln Mountain G. M. Co.* v. *Williams,* 37 Colo. 193, 85 Pac. 844.) One suing a corporation on an agreement made with an officer thereof cannot rely on the failure of the corporation to repudiate the contract, in the absence of a showing that the corporation had an opportunity to ratify the contract or repudiate it. (*Id.*) A corporation is not chargeable with notice that an officer having no authority to do so has executed a note in its name. (*Helena Nat. Bank* v. *Rocky Mountain Bell Tel. Co.,* 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829.) The doctrine that the knowledge of a corporate officer is imputable to the corporation does not apply to work performed on the corporate property under a contract with a director in his individual capacity, and with the understanding that he shall be personally liable. (*Ayers* v. *Green Gold Min. Co.,* 116 Cal. 333, 48 Pac. 221.) A corporation will not be estopped to disaffirm an unauthorized contract by receiving the benefits thereof unless it had knowledge of the contract. (*Rideout* v. *National Homestead Assn.,* 14 Cal. App. 349, 112 Pac. 192.)

In a suit for breach of an agreement to hire the plaintiff for a term not yet expired, prospective damages cannot be given. but only damages suffered from the time of the breach to the day of the trial. (*Gordon* v. *Brewster,* 7 Wis. 355.) The above case is the only one which we have been able to find in which the precise point was passed upon, and an examination will disclose that it is on all-fours with the case at bar. There are, however, a number of other cases in which the same principle has been upheld by the courts. (*Moore* v. *Love,* 48 N. C. (3 Jones) 215; *Hunt* v. *Tibbetts,* 70 Me. 221; *Tucker* v. *Tucker,* 24

Mich. 426; *Terry* v. *Beatrice Starch Co.,* 43 Neb. 866, 62 N. W. 255; *De Costa* v. *Massachusetts F. W. & Min. Co.,* 17 Cal. 613.)

*Messrs. Tolan & Gaines,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for breach of a contract of employment. It is alleged in the complaint that on April 24, 1910, at Battle Creek, Michigan, the plaintiff and the defendant mutually agreed that plaintiff should serve defendant as its superintendent at Plains, Montana, for a term of three years beginning on May 1, 1910, to receive therefor wages at the rate of $100 per month; that plaintiff entered upon the performance of the services required under the agreement, and has ever since been and is now ready to perform them; and that the defendant on August 31, 1911, wrongfully discharged plaintiff and refused to permit him to continue in its employment, to his damage in the sum of $2,000. The answer, after joining issue upon all the allegations of the complaint, except the corporate capacity of the defendant, interposed specially the defenses (1) that the contract alleged in the complaint was void, for that it was not in writing nor subscribed by the defendant or its agent, as required by section 5017 of the Revised Codes; and (2) that, while the plaintiff was in the employment of the defendant from May 1, 1910, to August 31, 1911, he was at the date last mentioned discharged therefrom for gross misconduct, incompetency and lack of attention to defendant's business. Upon these allegations there was issue by reply. The plaintiff had verdict and judgment for $1,200. Defendant has appealed from the judgment and an order denying its motion for a new trial.

The sufficiency of the evidence to justify the verdict was challenged in the trial court by motion for nonsuit and also on motion for a new trial, and the principal contention made in this court is that the trial court erred in refusing to grant a new trial on that ground. There was little substantial conflict

in the evidence, except in so far as it related to the question whether the discharge of the plaintiff was justifiable. On this issue the evidence was in sharp conflict. This feature of the case may, therefore, be passed without further notice than to say that the finding of the jury thereon is conclusive on this court. The determinative question in the case is whether the [1] facts disclosed a contract upon which the plaintiff was entitled to recover at all.

The defendant corporation was organized under the laws of Montana on or about July 1, 1909, with a capital stock of 500 shares, its place of business being at Plains, Montana. Of these shares, J. A. McGowan held 497; C. H. Rittenour, E. L. Johnson and F. W. Lewellyn each held one. On July 1, McGowan, Rittenour and Johnson were elected directors and, respectively, president, vice-president and treasurer. Lewellyn was made secretary. Rittenour and Johnson paid nothing for the shares held by them. Lewellyn did not testify, but it is inferable from the evidence that he paid nothing for his share. They were all stockholders and employees of the McGowan Commercial Company, a corporation doing business at Plains, and the First National Bank of Plains, in both of which McGowan was the principal stockholder. Apparently, they held their stock in the light and water company as an accommodation to McGowan, to perfect and maintain its organization. Though the company erected and put into operation a combined electric light, heating and water plant to supply the inhabitants of Plains with light and water, after the organization of the company but a single meeting of the board of directors was held prior to November 30, 1911, about two months after the cause of action involved herein arose. This meeting was held on October 13, 1909, for the purpose of authorizing an issuance of bonds of the company to secure the funds necessary to erect its plant. McGowan, the president, up until the time of his death on April 1, 1911, had exclusive control of the affairs and operations of the company. One witness who had been employed by the company, stated: "Mr. McGowan was the whole works." He contracted for the

erection of the building for the light and heating plant, hired and discharged workmen, and apparently purchased the material both for the building and for the installation of the wire and pipe lines. Later, the affairs of the company not being prosperous, it became necessary for it to borrow money to meet its pressing demands. It is a fair inference from the evidence that McGowan secured such funds as were needed, upon the credit of the company without consulting the board of directors. In the early part of the year 1910 he opened negotiations with the plaintiff, who then resided at Battle Creek, Michigan, for the purpose of securing his services as superintendent of the company's plant then approaching completion. The negotiations were at first through personal conferences between the two, the purpose for which plaintiff's services were sought being fully understood by both. McGowan was then in Battle Creek to secure medical treatment. After he returned to Plains the negotiations were continued by letter, and finally culminated in a contract, as is evidenced by the following letter from Mc-Gowan—written on a printed letter-head of the McGowan Commercial Company—and the reply thereto by plaintiff:

"Plains, Mont., Mar. 11, 1910.

"Mr. Chas. O. Edwards,

"181 W. St., Battle Creek, Mich.

"Dear Sir:

"I am willing to make you the following proposition: If you will come here with your family and take charge of the electric light and heating plant and help install the heating plant and the light plant and do whatever is necessary to be done in connection therewith and not be a stickler for hours—at times you would be required to work quite long hours, at other times your hours would be short—you will have no one to give you orders but myself and that with reference to the management only, I will guarantee to pay you $100 per month and give you a contract for three years. At the expiration of that time should your work prove satisfactory and successful, we will increase your pay and will sell you stock in this proposition, the entire

stock of which is owned by myself. We would probably want you here by the first of May. Should the material for the heating plant arrive a little earlier we would probably want you too at that time as I would want to have the man who is going to take charge of this work be here and work on the entire proposition of heating, and placing of the electrical machinery.

"Should this proposition meet with your approval, advise me at your earliest convenience. Should you require some money to enable you to get your household effects and family here, you can advise me of the amount needed and I will advance the same.

"I sent you under separate cover a paper and will continue to send you for the next few weeks a copy of this paper so that you may be advised some as to the conditions prevailing here. I shall also hold one-half of a double house that I am the owner of, for you until I hear whether you purpose accepting my proposition. With kind regards, I am,

"Yours respectfully,

"J. A. McGowan."

"Battle Creek, Apr. 7–10.

"J. O. McGowan,

"Plains, Montana.

"Sir:

"I will accept your proposition as I have been wanting to come west and settle in a small town for some time back. I will do the best I can for you and I think we can get along alright. If you think I had better bring my family when I come, advance me $160, with the privilege of paying it back by the month at legal interest. If I come alone $75 will do. Am ready to come any time.                    Yours for business,

"C. O. EDWARDS."

Other communications were exchanged, but, while indicating that the employment was for services for the company, none of them wrought any change in the terms of the agreement evidenced by the two letters quoted. On April 27 the plaintiff arrived at Plains and began work on May 1, continuing therein

under the exclusive direction of McGowan, until December 14, 1910. On that day he received the following communication from McGowan, written on a printed letter-head of the First National Bank of Plains:

"Mr. C. O. Edwards,

"Superintendent, Plains Light & Water Co.,

."Plains, Mont.

"Dear Sir:

"For sometime I have been impressed with the advisability of placing the entire management of the Light & Water Co. in your hands. The fact of having two heads is not pleasing or satisfactory to me. From this time on you will take entire charge of our property including the power house and also have jurisdiction over the employees at the power house. If at any time you feel that the interest of the business requires a change you are at liberty to make the same without consulting with me in reference to the matter. Thanking you for the efficient manner in which you have handled our affairs, I beg to remain,

"Yours respectfully,

"J. A. McGOWAN,

"President."

Thereafter he performed his duties until he was discharged by Mr. Blaisdell, the attorney of the company, on August 31, 1911, previous notice having been given him by Mrs. McGowan, the surviving wife of J. A. McGowan and the executrix of his will. His duties required him to superintend the running of the combined plant, to purchase supplies, to make repairs, to assist in collecting bills from customers and, during a large part of the time, to run the machinery in the power plant. After January 1, 1911, he was not permitted to make purchases without first having the purchasing lists approved by Rittenour, as vice-president, McGowan being then incapacitated by illness from which he subsequently died. Customers of the company who paid their current bills, without solicitation paid them to Johnson at the bank of which he was cashier. Except as here noted, none of the directors or officers of the company had any

connection with the company's business. The by-laws authorized the president to "sign as president all certificates of stock and all contracts and other instruments in writing which have first been approved by the directors."

To the letters quoted in the foregoing statement, considered in the light of the circumstances under which they were written, the purpose in view, and their interpretation by the parties (Rev. Codes, sec. 7877; *Armington* v. *Stelle,* 27 Mont. 13, 94 Am. St. Rep. 811, 69 Pac. 115; *Murphy* v. *Stone & Webster Eng. Corp.,* 44 Mont. 146, Ann. Cas. 1913A, 1334, 119 Pac. 717; *Ford* v. *Drake,* 46 Mont. 314, 127 Pac. 1019), we think, cannot be assigned any meaning other than that McGowan intended to employ, and did employ, the plaintiff to serve the defendant as its superintendent, upon the terms and for the period of time [2] specified. It is true that the letters are informal; it is true that his letter to plaintiff was signed by McGowan personally; it is also true that the proposal is stated as that of McGowan himself and that the consideration named was apparently to be paid by him. Yet, the proposition as made and accepted implied previous negotiations and also that the service desired was the superintendence of the plant owned, not by McGowan in person, but by a corporation the stock of which was owned solely by himself. That both understood this to be the situation is rendered certain by the character of the negotiations which contemplated employment by defendant, and by the fact that plaintiff went to Plains from his home in Michigan and immediately entered the service of the defendant under McGowan, without further negotiations or question, and continued therein until his discharge. It thus being clear that the intention of McGowan was to bind the defendant, it became bound (Rev. Codes, sec. 5449), as fully as if he had thereafter executed a formal contract in its name.

Counsel argue that, though all this be accepted as true and though the letters may upon the face constitute such a note [3] or memorandum as will satisfy the requirements of section 5017 of the Revised Codes, the agreement did not become bind-

ing upon the defendant, because McGowan had not been authorized by any act of the board of directors, expressed in writing, to enter into such a contract, as is required by section 5424. From its very nature, a corporation can act only through its officers and agents. These agents, including the officers, can exercise only such powers as are expressly or impliedly granted ·by its board of directors. It is well settled, however, that when the corporation entrusts to its president the active ·management of its business, he may bind the corporation by contracts which are within the scope of the powers of the corporation, and which are necessary or proper or usually made in the conduct of its business. (*Trent* v. *Sherlock*, 24 Mont. 255, 61 Pac. 650; *Mathias* v. *White Sul. S. Assn.*, 19 Mont. 359, 48 Pac. 624; *Spelman* v. *Gold Coin M. & M. Co.*, 26 Mont. 76, 91 Am. St. Rep. 402, 55 L. R. A. 640, 66 Pac. 597.) The fact that he is permitted by the board of directors to occupy the position of such an agent, carries with it the implication that he has been clothed by it with all the powers necessary to enable him to carry forward the ordinary business of the corporation; and when, as in this case, the board of directors, the members of which hold all the shares, either by direct action evidenced by a by-law or a resolution, or by continued acquiescence, authorizes or permits the president to exercise all its powers and functions, the board itself remaining entirely inactive, he becomes, for the time being, the board of directors, with all the powers it possesses, and the corporation cannot thereafter question the validity of any act done by him within the scope of its legal powers.

In *Cunningham* v. *German Ins. Bank*, 101 Fed. 977, 41 C. C. A. 609, it was said: "Where the stockholders of a corporation, by their direction or acquiescence, invest the executive officers of the company with the powers and functions of the board of directors as a continuous and permanent arrangement, the board being entirely inactive, and the officers discharging all its duties, a mortgage on the property of the corporation, made and executed in its behalf by such officers, is valid although not authorized by any vote of the stockholders or directors."

49 Mont.—35

The courts have often been called on to consider the validity of acts of the president of a corporation under similar circumstances, and, though expressing the rule in varying terms, generally uphold the doctrine announced by the court in the above quotation. The following cases in principle directly support it: *Buchwald Co.* v. *Hurst*, 111 Md. 572, 75 Atl. 111; *Gilman* v. *Heitman*, 137 Iowa, 336, 113 N. W. 632; *South Florida Citrus L. Co.* v. *Waldin*, 61 Fla. 766, 55 South. 862; *Chestnut St. T. & S. F. Co.* v. *Record Pub. Co.*, 227 Pa. 235, 136 Am. St. Rep. 874, 75 Atl. 1067; *Tyler Estate* v. *Hoffman*, 146 Mo. App. 510, 124 S. W. 535; *Wales-Riggs Plantations* v. *Caston*, 105 Ark. 641, 152 S. W. 282; *Ceeder* v. *H. M. Loud & Sons Lumber Co.*, 86 Mich. 541, 24 Am. St. Rep. 134, 49 N. W. 575; *National St. Bank* v. *Sandford Fork & Tool Co.*, 157 Ind. 10, 60 N. E. 699; *St. Clair* v. *Rutledge*, 115 Wis. 583, 95 Am. St. Rep. 964, 92 N. W. 234; *Tourtelot* v. *Whithed*, 9 N. D. 467, 84 N. W. 8; see, also, 3 Cook on Corporations, sec. 716; 2 Thompson on Corporations, sec. 1458.

In *Chestnut St. T. & S. F. Co.* v. *Record Pub. Co.*, *supra*, the court considered the authority of the president of a corporation where the board of directors had been dormant from the time of the organization of the corporation, and had left the conduct of the business exclusively to the president, and tersely stated the rule thus: "Where the stockholders and directors turn over to an officer the full and absolute management of all corporation affairs, and permit him to exercise unrestrained control for a long course of time without instructions from or reference to any other authority, *prima facie* the officer so entrusted may be taken to have power to do any act which the directors could authorize or ratify." And it does not alter the case that the person seeking to charge the corporation did not have knowledge of the manner in which the affairs of the corporation were being conducted. (*First Nat. Bank* v. *Colonial Hotel Co.*, 226 Pa. 292, 75 Atl. 412.)

We think that notwithstanding the provisions of the by-law, apparently giving to the president the power to execute contracts

only upon approval by the board, the rule established by the cases cited is applicable to this case.

The statute (Rev. Codes, sec. 3883) requires that the affairs of the corporation shall be controlled by a board of directors. [4] Section 3836 declares that the directors must perform the duties enjoined upon them by law and the by-laws of the corporation, and that the decisions made by a majority of the board shall be valid as corporate acts. These provisions do not restrict the power of the board to authorize the general executive officer to conduct the business of the corporation under its direction, and the authority to do this may be conferred by specific act or by implication, under the rule stated above, by an acquiescence in his assumption of it. When, as here, the purpose of the organization of the corporation is to serve the business interests of the president himself, and the board is composed of persons who have evidently been selected because they will acquiesce in his complete and exclusive control, and they do acquiesce, then the president is the corporation itself, so far as strangers are concerned, and any act done by him is to all intents and purposes the act of the corporation. The corporate entity, as distinguished from him in his capacity of agent, is to be ignored, and when he executes such a contract as that under consideration here, it must be regarded as much that of the company as if it had been authorized in the most formal manner.

The evidence was amply sufficient to justify the finding of the jury that McGowan had authority to execute the contract.

The next contention is that the court erred in excluding from the evidence the minute-book of the board of directors which was offered for the purpose of showing that the board had never passed a resolution authorizing the president to enter into the contract with the plaintiff. The evidence would not have tended in any way to rebut the evidence introduced by the plaintiff to show authority in McGowan. The theory of plaintiff's counsel was that under the circumstances disclosed, the inquiry whether express authority had been conferred upon McGowan

was wholly immaterial. The court adopted this theory, and we think it was correct.

These remarks dispose of the further contention that the court erred in refusing to instruct the jury that the plaintiff could not recover unless it was shown by a preponderance of the evidence that McGowan had been authorized by the board, in writing, to enter into the contract, or that the board had subsequently ratified the contract in writing. As we have heretofore shown, the act of McGowan was to all intents and purposes the act of the company. The instruction was properly refused because it was inconsistent with the correct theory of the case and would have been tantamount to directing a verdict for the defendant.

Finally, it is contended that the measure of damages submitted in the instructions was erroneous. The court instructed [5] the jury that if they found that the plaintiff was entitled to recover under the law as declared in other instructions, he would be entitled to a verdict for the amount he would have earned under the contract to the end of the term, less any amount he had received for his services rendered to others, or should have received by the exercise of diligence to secure profitable employment after the date of his discharge, and such additional sum as they believed he might have earned by the exercise of due diligence up to the end of the term. The plaintiff brought this action for a breach of the entire contract for services. This he had a right to do; for upon the happening of the breach the wrong done him was complete and he then became entitled to recover in the one action whatever damages flowed from the wrong thus done. His compensation for the breach necessarily included all that he might have recovered had action been deferred until the expiration of the term. His earnings for the entire term were in the direct contemplation of the parties when they made their engagement. He was therefore entitled to have the jury assess the damages for the entire term, even though the trial was had before the expiration of it. And though the amount to be assessed for the unexpired portion of

the term, in this character of cases, is largely a matter of speculation, nevertheless the difficulty encountered in ascertaining it is not greater than in other cases, especially in personal injury cases, and the amount recoverable must be determined in view of all the circumstances disclosed by the evidence in the one case as well as in the other.

There is some conflict in the adjudicated cases upon the subject. In Wisconsin it is held that recovery may be had only for the compensation stipulated for in the contract, up to the time of trial, less any wages the plaintiff may by reasonable diligence have earned in the meantime. (*Gordon* v. *Brewster,* 7 Wis. 309.) In Minnesota it is held that where the compensation is payable in installments, an action may be brought to recover each installment when it falls due, the failure to pay it when due constituting a separate and distinct breach of the contract. (*McMullan* v. *Dickinson Co.,* 60 Minn. 156, 51 Am. St. Rep. 511, 27 L. R. A. 409, 62 N. W. 120.) The better reasoning and, we think, the weight of authority support the rule adopted by the trial court. (3 Sutherland on Damages, 3d ed., sec. 692; Labatt's Master & Servant, sec. 347; *Dennis* v. *Maxfield,* 10 Allen (Mass.), 138; *Blair* v. *Laflin,* 127 Mass. 518; *Pierce* v. *Tennessee Coal, Iron & R. R. Co.,* 173 U. S. 1, 43 L. Ed. 591, 19 Sup. Ct. Rep. 335; *East Tennessee etc. R. Co.* v. *Staub,* 7 Lea (Tenn.), 397; *Remelee* v. *Hall,* 31 Vt. 582, 76 Am. Dec. 140; *Sutherland* v. *Wyer,* 67 Me. 64; *Chamberlin* v. *Morgan,* 68 Pa. 168.) Under this rule, contrary to the contention of counsel, a plaintiff may recover nothing more than was fairly within the contemplation of the parties when the contract was made, and the judgment concludes him from bringing action to recover anything else in the future.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER concurs.

MR. JUSTICE HOLLOWAY, being absent, takes no part in the foregoing decision.