# FIRST NATIONAL BANK OF CHELSEA

v.

# J. G. FITTS.

MAY TERM, 1894.

*Renewal of note procured by misrepresentation of third person.  Chattel mortgage.  Sufficiency of description.*

1.  The defendant, being liable as principal to the plaintiff upon a promissory note, was adjudged an insolvent.  During the pendency of insolvency proceedings and after the granting of his discharge, he was induced by the false representations of a surety on the note and the assignee in insolvency to the effect that the note had not been allowed against his insolvent estate, and that his liability upon it would not be relieved by his discharge, to sign from time to time renewals of the note.  *Held,* that he could not avoid his liability upon the last of these renewals by reason of such false representations, for the parties who made them did not represent the persons.

2.  A description in a chattel mortgage may be good as between the parties, and entirely insufficient as to third parties.

3.  The description "all growing grass on my home place, except sufficient for ten tons of hay; all growing crops, except what the law exempts, on said home farm," is good as between the parties.

4.  The mortgage is not void, because no provision is made for separating the exempt from the non-exempt.

Trover, for certain hay and farm products.  Heard at the December term, 1893, Orange county, upon the report of a

referee, START, J., presiding.   Judgment *pro forma* for the
defendant to recover his costs.   The plaintiff excepts.

The plaintiff claimed title to the property in question, un-
der a chattel mortgage, from the defendant to itself.   The
referee found that the defendant had appropriated the prop-
erty in question and had thereby converted it, if the title of
the plaintiff was a valid one.   The defendant denied the
validity of the plaintiff's title ;  first, because the note, to se-
cure which the mortgage was given, was invalid ;  and sec-
ondly, because the mortgage itself was void by reason of the
indefiniteness of the description of the property mortgaged.

In reference to the first point, it appeared that the note in
question was given in renewal of a note originally dated
October 13, 1884, and payable to the plaintiff bank.   The
defendant obtained the money on this note from the plaintiff
and procured one Moses Spear to sign with him as surety.
November 25, 1884, the defendant was adjudged an insol-
vent debtor upon a petition dated October 22, 1884, and
such proceedings were had that February 20, 1886, he re-
ceived a discharge in insolvency discharging him from all
debts existing previous to said October 22.

The plaintiff proved its debt against the insolvent estate,
but whether it received a dividend, or what dividend, did
not appear.

April 13, 1885, the note was renewed, and was again re-
newed from time to time thereafter down to April 8, 1889,
when the note secured by this mortgage was given.

Before the renewal of the note on April 13, 1885, the said
Spear saw the defendant, gave him a bank note to sign to
renew the other, and told him that the court of insolvency
would not allow the proof of the note, and that the defend-
ant would have the note to pay.   Subsequently the defend-
ant applied to one Porter, his assignee in insolvency, and
was informed by Porter that the note had not been allowed
against the estate.   In signing the renewal on April 13, the

defendant relied upon the representations of Spear and Porter, and he did not know, until after the giving of the note and mortgage in question, that those representations were not true.   The referee found that the defendant would not have signed the note of April 13, 1885, nor the renewals, including the note secured by the mortgage in question, had it not been for the aforesaid false representations of Spear and Porter.

Neither the plaintiff nor any of its officers knew what had passed between the defendant and Spear and Porter in reference to the renewal of the note, or what had been said to induce the plaintiff to renew it.

The description in the chattel mortgage was as follows :

"One black mare and one baby colt and their increase, all growing grass on my home place except sufficient for ten tons of hay, all growing crops except what the law exempts on the said home farm, and all the farming tools on said premises."

*J. K. Darling* for the plaintiff.

This suit being between the mortgagor and mortgagee, no technical rule of law should be allowed to interfere in caerying out the agreement of the parties, and all parts of the mortgage should be construed together.   Cobbey, Ch. Mort., ss. 5, 6, 67 ;  *Merrill* v. *Gove*, 29 Me. 346 ;  2 Kent, Com., 555.

The defendant actually owed this debt to the bank, and gave the mortgage to secure the debt, without being induced thereto by any fraudulent representations upon the part of the bank.    Under these circumstances he cannot attack the security.  *Noble* v. *Schofield*, 44 Vt. 281 ;  Cobbey, Ch. Mort., s. 773 ;  *Bank of Skowhegan* v. *Maxfield*, 83 Me. 576.

The mortgage is not void for uncertainty.  *Seay* v. *McCormick*, 68 Ala. 549.

*J. H. Watson* and *A. M. Dickey* for the defendant.

The defendant was induced to sign the note and execute the mortgage by the fraudulent representations of Spear and Porter. By accepting the note the bank made those persons its agents, and their representations its own; for it took the benefit of their act. Hence the plaintiff is responsible for their representations. *Harvester Co.* v. *Miller*, 72 Mich. 265; (16 Am. St. Rep. 536); *Eastman* v. *Provident Mu. R. Ass'n*, 65 N. H. 176; (23 Am. St. Rep. 29); *Busch* v. *Wilcox*, 82 Mich. 336; (21 Am. St. Rep. 563); *Elwell* v. *Chamberlain*, 31 N. Y. 611, 619; *Bennett* v. *Judson*, 21 N. Y. 238; *Presby* v. *Parker*, 56 N. H. 409; *Wheeler & Wilson Mfg. Co.* v. *Aughey*, 144 Penn. St. 398; *Mayor* v. *Dean et al.*, 115 N. Y. 556; *James* v. *Hodsden*, 47 Vt. 127; *Town's Admr.* v. *Waldo*, 62 Vt. 118; *Cattrill* v. *Krum*, 100 Mo. 397; (18 Am. St. Rep. 549); *Addington* v. *Allen*, 11 Wend. 374.

The mortgage is void for uncertainty. There is no provision for separating the property which is mortgaged from that which is not. *Fowler* v. *Hunt*, 48 Wis. 345; *Dodds* v. *Neel*, 41 Ark. 70; *Person* v. *Wright*, 35 Ark. 169; *Clark* v. *Vorhees*, 36 Kan. 144; Jones, Ch. Mort., s. 57.

Such a mortgage would make the mortgagor and mortgagee tenants in common of the property. Jones, Ch. Mort., s. 56; *Blakely* v. *Patrick*, 67 N. C. 40; *Spivey* v. *Grant*, 96 N. C. 214; *Byrd* v. *Forbes*, 13 Pac. Rep. 715.

START, J. It appears that the defendant as principal, and one Moses Spear as surety, on the thirteenth day of October, 1884, gave the plaintiff their promissory note. On the twenty-fifth day of November, 1884, the defendant was adjudged an insolvent debtor, and obtained his discharge. On the eighth day of April, 1885, the defendant and said Spear renewed the note thus given to the plaintiff by giving a new

note; and new notes were given by them from time to time until April 8, 1889, when the note secured by the chattel mortgage in question was given. Before the first renewal of the note Spear gave the defendant a blank renewal note to sign, and told him the court of insolvency would not allow the original note, and that he would have it to pay. Before the defendant signed the renewal note he asked the assignee of his estate if the note had been allowed, and he told him it had not. The note was renewed from time to time at the suggestion of Spear. The defendant would not have renewed the note had he known that his discharge released him from liability on the original note. The original note had in fact been allowed by the court of insolvency, but the defendant was not aware of this; and at the time he executed the chattel mortgage in question, he did not know that the statements of Spear and the assignee were untrue. Neither the plaintiff nor any of its officers knew anything of what passed between Spear, the assignee, and the defendant, in reference to the renewal of the note, nor what was said to induce the defendant to renew it.

The defendant claims that the plaintiff adopted the acts of Spear and the assignee in procuring a renewal of the note, and that it is chargeable with knowledge of the representations make by them in so doing. We do not so hold. Spear and the assignee were not acting for the plaintiff; they were not the agents of the plaintiff. Spear was acting for himself and for his own interest, and the assignee only answered an inquiry made by the defendant. It was for Spear's interest to have the defendant remain liable on the original debt, and he procured the defendant to renew the note for his own benefit, not for the benefit of the plaintiff. The plaintiff did not take any steps toward having the defendant renew the note; it was renewed by the defendant from time to time at the suggestion of Spear. When the defendant was adjudged an insolvent person and obtained his dis-

charge, he was no longer liable upon the original note. Pending the question of his discharge, the note could be enforced only against Spear. . It was his duty to pay it.   He did not pay it, but elected to renew it; and, in renewing it, he was acting for himself.   He was not engaged in the business of the plaintiff; and the · case differs in principle from the class of cases cited by the defendant, where it is held that if a principal adopt a contract of a self-constituted agent, who assumes to act for him without authority, he is bound by all acts within the scope of the assumed authority of such agent.   Spear did not assume to act for the plaintiff ; he was acting for himself.   We, therefore, hold that the note to secure the payment of which the chattel mortgage in question was given was the note of the defendant, and that he cannot avoid the mortgage by reason of any infirmity in the note.

It is claimed that the mortgage does not contain a sufficient description of the property, and that no lien was thereby created upon any of the property sued for.   The property sued for is described in the mortgage as follows :

"All growing grass on my home place, except sufficient for ten tons of hay ; all the growing crops, except what the law exempts, on said home farm ; and all the farming tools on said premises."

In *Parker* v. *Chase and Buck,* 62 Vt. 206, it is said :

"While a description need not be enough to enable one to find the property without inquiry, it must be such as to indicate the line of inquiry and furnish the basis of identification."

Applying this rule, we think the description of the grass and crops is sufficient, as between the parties.   The defendant described the grass in his mortgage as growing on his home place, and the crops as growing on his home farm. He must have known the location of his home place and his home farm ; and, if he did, he knew that a portion of his grass and other crops was mortgaged, and he was not labor-

ing under a mistake when he converted them to his own use. The inquiry suggested by the mortgage would lead the mortgagee to look for the mortgagor's home place and home farm at the time the mortgage was executed; and, when he had found them, he could identify the property mortgaged by inquiry suggested by the mortgage itself. As between the parties, this is all that is required. The statute relating to the execution and recording of chattel mortgages has not affected the rights of the parties to the mortgage; they remain the same as they were at common law. R. L., s. 1966. As between the parties to a chattel mortgage, any description is sufficient, if by it the mind is directed to evidence whereby it may ascertain the precise property conveyed. *City Bank* v. *Ratkey*, 79 Iowa 215. Written descriptions of property do not identify by themselves. They only furnish the means of identification; and, as between the parties, they are to be interpreted in the light of the facts known to, and in the minds of, the parties at the time. A description which is sufficient between the parties to the mortgage may be utterly insufficient as against third persons. As between the parties, a specific and particular description is not necessary; but, to be effectual as against third persons, it must point out the subject matter so that such persons by it, together with such inquiries as the instrument suggests, may be able to identify the property intended to be covered. *Tindall* v. *Wasson*, 74 Ind. 495; *Cass* v. *Gunnison*, 58 Mich. 108; *Tootle* v. *Lyster*, 26 Kan. 598; *Gurney* v. *Davis*, 39 Ark. 394.

The crops are described as "all the growing crops, except what the law exempts, on said home farm," and it is contended that, inasmuch as all growing crops are exempt from attachment and levy upon execution, no crops are mortgaged. Such a construction would render the mortgage, so far as it relates to crops, meaningless, and ought not to be given, if the language used admits of any other

interpretation. Words are not to be construed in a frivolous or ineffectual sense when a contrary exposition can be given; they should have a reasonable construction, according to the intent of the parties. It is clear that the parties intended some crops to be covered by the mortgage; and, to give effect to their contract, we must hold that the parties intended by the words, "except what the law exempts," to except from the operation of the mortgage such crops as would be exempt after they were severed from the freehold. We think this to be the true construction to be given to the words used. By this construction we give effect to the clear intent of the parties, and give the contract, in respect to crops, legal and actual operation.

It is claimed that the mortgage, so far as it relates to grass and crops, is void, because it contains no provision for separating the mortgaged from the unmortgaged portion. As between the parties, chattel mortgages need not contain a specific and particular description of the several articles by which to identify them from other like articles of the mortgagor. *Gurney* v. *Davis*, *supra;* Cobbey on Chattel Mortgages, s. 69; *Cull* v. *Gray*, 37 N. H. 428. A mortgage of one-third of twenty-one acres of growing wheat, situate in a certain place, means an undivided third of such wheat, and is a sufficiently particular description. *Zehner* v. *Aultman*, 74 Ind. 24. The holding in *Senis* v. *Mead*, 29 Kan. 88, and *Potts* v. *Newell*, 22 Minn. 561, is to the same effect. A mortgage of "fifty thousand pounds of cotton, to be produced during the present year," on described premises, sufficiently describes the property. *Robinson* v. *Mauldin*, 11 Ala. 977.

When the defendant had appropriated to his own use sufficient grass to make ten tons of hay, and the number ol bushels of potatoes, wheat, corn and oats, exempt from attachment and levy upon execution, he knew that the balance of the hay and crops were holden as security for the payment

of the mortgage debt; and when he converted them to his own use, he is presumed to have done so knowing that he was converting property, the legal title of which was in the plaintiff, and in which he had only an equity of redemption. No further description of the property was necessary to enable him to say what quantity of hay and other crops should be set apart to satisfy the mortgage debt; and he has no reason to complain if he is chargeable only with the balance of the grass and other crops after deducting the quantities excepted in the mortgage. He could not have understood that he was entitled to more until the mortgage debt was paid. By holding as we do that the mortgage upon the grass and crops was valid between the parties, we give effect to the manifest intention of the parties.

*The pro forma judgment is reversed, and judgment rendered for the plaintiff to recover $303.77 and its costs.*

Thompson, J., being engaged in county court, did not sit.