CUNNINGHAM et al. v. GERMAN INS. BANK.

(Circuit Court of Appeals, Sixth Circuit.   May 14, 1900.)

No. 796

**1.** BANKRUPTCY—PROVABLE DEBTS—CORPORATIONS—LIMIT OF INDEBTEDNESS.

The articles of association of a manufacturing corporation limited the amount of indebtedness which it might contract to one-half the amount of its paid-up capital stock.   The assets of the company having greatly depreciated, the bookkeeper made an entry on the books charging the loss to the capital stock, but this was not recognized by the officers or stockholders as a reduction of the capital, no amendment of the articles of association was filed or recorded, and no stock was called in or surrendered. Thereafter a debt was contracted by the company, which amounted to more than half the sum of its available assets, but did not exceed half the amount of stock paid up and actually issued to stockholders and held by them.   *Held*, that such debt was valid and provable against the estate of the corporation in bankruptcy.

**2.** SAME—INCREASE OF CAPITAL—STOCK DIVIDENDS.

Where a corporation which is earning large profits divides them among the stockholders in the shape of stock dividends, the increase of its capital in this manner being authorized by the stockholders, the whole amount of the stock, comprising both the amount originally subscribed and the amount added by such dividends, is to be regarded as "paid-up capital stock," for the purpose of determining the validity of a debt contracted by the corporation under a provision in its charter limiting its indebtedness to one-half the amount of such stock.

**3.** SAME—MORTGAGE BY OFFICERS OF CORPORATION.

Where the stockholders of a corporation, by their direction or acquiescence, invest the executive officers of the company with the powers and functions of the board of directors as a continuous and permanent arrangement, the board being entirely inactive, and the officers discharging all its duties, a mortgage on the property of the corporation, made and executed in its behalf by such officers, is valid, although not authorized by any vote of the stockholders or directors.

Appeal from the District Court of the United States for the District of Kentucky, in Bankruptcy.

This is an appeal from a judgment of the district court of the United States for the district of Kentucky, sitting in bankruptcy, upon a petition for review of certain orders of the referee respecting the allowance of claims.   Scanlan & Co., a Kentucky corporation engaged in the manufacture of glass at Louisville, was adjudicated a bankrupt upon the petition of its creditors, and thereupon the matter was referred to John B. Baskin, one of the referees in the said court.   On the 15th day of November, A. D. 1899, a hearing was had before the referee upon certain claims in favor of the German Insurance Bank, also of Louisville, against the bankrupt's estate, consisting of three items,— one for the sum of $4,443.57, another for $412.74, and another for $36,948.33. which latter sum was claimed to have been secured by a mortgage bearing date June 9, 1898, upon the real estate and plant of the said bankrupt.   The allowance of these claims for debts and for a lien under the mortgage was contested before the referee by certain other creditors of the bankrupt, being the same persons named as appellants on this appeal.   The grounds upon which the contest was made were these:   That, with respect to the debts sought to be established, the aggregate amounted to a much larger sum than the limit of indebtedness fixed by the charter of the bankrupt, which was one-half of the paid-up capital stock of the company; and the creditors claim that so much of the indebtedness was void as to creditors as was in excess of the limit.   That, with respect to the mortgage lien, the mortgage was executed by the president and secretary of the corporation, without authority of the board of directors or the stockholders, and therefore void;   and, further,

101 F.—62

that the debt purporting to be secured thereby being void, for the reason above stated, the mortgage should share its fate. The referee allowed all three of the claims as simple contract debts, but denied the bank's claim for a lien under the mortgage. The creditors filed a petition for review by the judge of the allowance of the claims as debts, in so far as they were in excess of the limitation of the bankrupt's charter, and the bank filed a petition for review of the adjudication, denying the validity of its mortgage lien. Thereupon the referee made a certified statement of the facts found by him, a summary statement of the evidence, and his conclusions thereon, and transmitted the same to the district court. Subsequently, on the request of counsel for the bank, the referee amended the certificate in certain particulars, giving further detail of the facts and evidence. The matter came on for hearing upon the questions raised before the referee, and the record shows that on the 1st day of December, 1899, the court made an order wherein it sustained the finding of the referee in respect of the indebtedness, but reversed his ruling in reference to the validity of the mortgage, which was adjudged to be a valid lien upon the estate covered thereby. The creditors have appealed from both parts of this order, as well that part adjudging the indebtedness to be valid as that which affirms the mortgage lien. The grounds of appeal are stated in the following assignment of errors: First, the court erred in allowing the German Insurance Bank, claimant therein, a mortgage lien for its whole debt, or any part thereof; second, that the court erred in failing to hold that the said German Insurance Bank was bound by the notice which it had of reduction of the capital stock of Scanlan & Co., and in allowing the claim of the bank for a greater sum than was owing at the time of said notice. In response to the appeal the clerk of the district court sent up a transcript, which was duly filed. After the filing of the transcript, counsel for the appellee has entered a motion to dismiss the appeal on the ground that the clerk's certificate to the transcript did not show that he certified the whole of the record from the district court, in consequence of which, as he insisted, the appeal failed; and, second, if that motion should be denied, that so much of the appeal as related to the adjudication of the validity of the mortgage lien should be dismissed upon the ground that that matter could not be considered upon appeal, but only under the supervisory power of this court. This motion was denied in whole and in part, on the 19th day of February last. Judge Lurton delivering the opinion of the court. 43 C. C. A. 377, 103 Fed. 932. The particular facts upon which the controversy was carried on in the court below are stated in the opinion.

W. W. Watts, for appellants.

Otto A. Wehle, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

Preliminary matters having been already disposed of, we have now to dispose of the case upon the merits. The first error assigned challenges the ruling of both the referee and the judge allowing the claims of the bank in full as debts of the bankrupt, it being insisted by the creditors that the aggregate of these claims far exceeds the limit of indebtedness which bounds the power of the bankrupt corporation in that regard. This contention of the creditors rests upon the following grounds: The statute of Kentucky, under which Scanlan & Co. were incorporated, is a general act, providing for the organization of such bodies by the voluntary act of a stated number of associates, and defining their powers. These are of the usual character conferred upon corporations so organized. It is also provided that the articles of association shall be filed for record in the office of the county court clerk before the corporation shall com-

mence business. But section 5 of the act prescribes that "a notice shall be published for at least four weeks in some newspaper as convenient as practicable to the principal place of business, which notice shall specify: * * * (6) The highest amount of indebtedness or liability to which the corporation is at any time to subject itself"; and in section 6 it is declared "that their acts shall be valid if the publication in a newspaper is made," and filed in the clerk's office, and a copy filed in the office of the secretary of state, when that is necessary under the provisions of law. Chapter 56, Gen. St. Ky. 1883; Acts 1869–70. By the same act it is declared that "no change in any of the foregoing particulars shall be valid unless recorded and published as the original articles are required to be." Scanlan & Co. was organized July 16, 1881, under this law, with a capital stock of $40,000, of which only $15,000 was then paid up, and with respect to the residue it was provided in the articles that it was to be disposed of as the board of directors (of which there were three) might direct. The notice published under the requirements of section 5 limited the liability which might be incurred to one-half of the capital stock paid up. The management of its affairs was left to the executive officers of the company, and no question appears to have been made of their acts by any other officer or stockholder. Annual meetings of the stockholders were generally held, but from the time of its incorporation to 1896 only one meeting of the directors of the company appears to have taken place. Its business for several years was prosperous, and a surplus was accumulated, subject to dividend; but by common consent, and as shown by entries on the stock journal from time to time, the remaining $25,000 of the original stock was distributed among the stockholders in lieu of dividends for a like amount, and certificates were delivered to the stockholders therefor. In November, 1884, an amendment to the charter was filed and recorded in the office of the clerk of the county court. This amendment provided for an increase of the capital stock to $150,000, and recited the consent thereto and the authority from the stockholders for the execution thereof, and was signed by the president and secretary. But there was no record of any resolution of the stockholders authorizing the increase. The corporation continued to make profits, and for these profits new stock was issued, and divided among the stockholders as paid up, and the profits were consumed in that way. The stock journal showed, as the referee states, "that from time to time stock dividends were declared, and each stockholder was credited on the books of the corporation with the increased stock, and received certificates for it." The aggregate of all the stock, old and new, issued and divided among the stockholders as paid for, was $138,000. From this and other evidence recited by him, the referee found that the increase of the capital stock to $138,000 was sanctioned by the stockholders, and was valid. In July, 1897, the books of the corporation showed an impairment of the assets to such an extent as that only $50,000 was left, and an entry was made by the bookkeeper on the trial balance and representative ledger charging the capital stock with the loss, but there was no actual reduction

of the certificates of stock, which, on the contrary, continued to be held as before. There was no evidence that the stockholders or board of directors assented to any reduction of the stock. The referee held that no change in the amount of the capital stock was effected by the entries made upon the books above mentioned. A bookkeeper of the bank, sent to examine the books of the company, reported on May 1, 1898, that the capital stock was then $50,000. On the 9th day of June following, the bank took the mortgage for $35,000, the most of which consisted of a former debt of the company secured by mortgage.

No question being made of the amount of the actual indebtedness, aside from the effect of the supposed limitation by the charter of the power to create it, we are of opinion that the referee and the district judge were clearly right in adjudging it to be valid. The proof was ample to show that the corporation of Scanlan & Co. practically devolved the powers of the board of directors upon its executive officers, and that this method of doing business was not casual and temporary merely, but continuous from the date of its commencing to do business to the end. The board of directors was dormant. The rule is that where, by the direction or acquiescence of the stockholders, the executive officers of a corporation assume and exercise the functions of the board of directors, the corporation and those deriving rights from it while it is so managing its affairs are bound by the acts of its officers to the same extent as if they had been directed by the board. In so far as the duties of the directors are not expressly prescribed by the charter, they derive their powers from the stockholders, who may, if they see fit, select other agencies for the transaction of the corporate business. 1 Mor. Priv. Corp. § 515. Not only is this so, but a similar rule applies to those things which the stockholders themselves might, and, in the ordinary course of conducting corporate affairs would, do or authorize to be done. Thomp. Corp. §§ 5318, 6165, 6179, and the cases there cited. And the court of appeals of Kentucky, whose decisions in reference to the construction of the statutes of the state in relation to incorporations, and the scope of the powers derived therefrom, we are required to follow, has recognized and adopted these propositions as applicable to the corporations of that state. Bell & Coggeshall Co. v. Kentucky Glass-Works Co. (Ky.) 50 S. W. 2. These rules are, of course, as is implied from the statement of them, subject to the paramount doctrine that neither the stockholders nor any agency of the corporation can transcend the limits of the powers granted by the charter. Other principles must sometimes be applied in order to accomplish the ends of justice, but they do not proceed from a recognition of the lawfulness of the offending act. The power to create debts is an ordinary incident to a manufacturing corporation, and, when such debts are created by agents authorized to execute its powers, they must bind the corporation. The only distinction between the rulings of the court of appeals of Kentucky and those prevailing in other tribunals that we notice is that the Kentucky court, adopting the theory generally accepted that the articles of association of a corporation under a general law are of the like force and effect

as a charter directly granted, construes the provision in the articles that the highest amount of indebtedness to which the corporation is to subject itself shall be stated therein, to be, so far as creditors are concerned, an absolute limitation of its powers in that direction, and a negation of the validity of any excess of indebtedness beyond the sum so fixed, although the corporation itself would be estopped from setting up that defense. This doctrine is established by repeated decisions in that state; among them the case of Bell & Coggeshall Co. v. Kentucky Glass-Works Co., above cited, the most recent to which our attention has been called. This ruling seems to rest upon the public policy of protecting creditors, in whose interest this special provision of the statute was made. Upon this construction of the statute the invalidity of the excess of indebtedness seems a logical sequence.

Accepting this construction of the power of the corporation, notwithstanding it was held differently in a case arising in another state of this circuit, where a different interpretation was admissible, and that interpretation had been given by the subordinate courts of the state (Central Trust Co. v. Columbus, H. V. & T. R. Co. [C. C.] 87 Fed. 815), we are of opinion that there was no violation of the law in the creation of the indebtedness here in question. At the time when it was incurred the articles had been so amended as to authorize the increase of capital stock to $150,000, and there had been taken $138,000, which had been paid for. The amount of indebtedness is much less than one-half of the latter sum. We attach no importance to the act of the bookkeeper in charging the depreciation of the assets to the capital stock. It was not recognized by any act of the stockholders or of its officers as a reduction of the capital stock. No amendment of the articles was filed or recorded, nor was any stock, or fraction thereof, called in or surrendered. It was a mere matter of bookkeeping, and ended with that. The issuing of stock in lieu of dividends was not unlawful. It was the same thing as if the dividends had been actually paid over, and then, by the stockholders, repaid to the company for the stock.

What we have said in assigning the reasons upon which we hold the indebtedness to be valid disposes also of the second assignment of error wherein the validity of the mortgage is challenged. If it was within the power of the corporation, as we hold it was, to create the debt through the agency of the managing officers vested with the ordinary functions of the board of directors, a mortgage of its property, executed in its behalf by such officers while exercising such authority, must be held valid also, notwithstanding there was no authority from the board of directors; for it is an ordinary incident to the creation of a debt (Thomp. Corp. § 6133), and the power to give it came from the ultimate constituency.

There are some other incidental questions of minor importance referred to in the argument and briefs of counsel. But none of them are controlling of the main subjects of the controversy, which we have already considered, and we do not think it necessary to particularly discuss them. Finding no error in the order of the district judge, we direct it to be affirmed.