### In re RIGGI BROS. CO., Inc.
### No. 303.

Circuit Court of Appeals, Second Circuit.
June 9, 1930.

Riggi Bros. Co., Inc., a New York corporation doing business in Vermont, filed its

voluntary petition in bankruptcy on the 8th day of November, 1926, in the District Court for the District of Vermont, and was duly adjudicated a bankrupt. A trustee in bankruptcy was elected and qualified. On April 13, 1929, the court, after notice and hearing, approved a compromise agreement the trustee had made with three banks who claimed to be in part secured creditors by virtue of a chattel mortgage covering certain property of the bankrupt given to one of them as trustee. At the time the compromise agreement was made, the property of the bankrupt had all been sold under a stipulation by which the trustee held the proceeds of the sale subject to the respective rights of all parties in interest to the same effect as though the property had not been sold. The chattel mortgage had been given more than four months before bankruptcy, but its validity was in dispute, both on the ground that it had not been authorized by a vote of at least two-thirds of the stockholders of the mortgagor as required by the New York law, and on the ground that the affidavit attached to it was insufficient under the law of Vermont, where the mortgage was executed and where the property was located, although it did appear that the mortgagee had taken possession of the property under the mortgage before the petition in bankruptcy was filed. The sufficiency of the description in the mortgage was questioned, and in addition to this the trustee claimed to be entitled to have certain attachment liens on the property preserved for the benefit of the estate and had filed a petition for that purpose. Petitions had been filed by the banks for various purposes relating to their claims upon the property of the bankrupt estate and in general had for their ultimate object deficiency allowances as unsecured creditors after the proceeds of the property on which security was claimed had been exhausted.

The compromise agreement provided for the waiver of any claims for such deficiencies; for the waiver of any claim to security except on the excess of the proceeds of the sale of all property in the bankrupt estate after the expenses of administration, all preferred claims, and 10 per cent. on each unsecured claim proved and allowed had been paid; that the trustee should waive all claim to any balance of the funds in his hands over that required to pay as above stated and should not contest the validity of the mortgage.

This mortgage was executed on May 3, 1926, to secure three notes—one for $7,500 of like date with the mortgage, one for $10,-000, dated April 10, 1926, and one for $7,-500, dated April 1, 1926, and also any subsequent indebtedness. It was given with the consent and approval of Joseph A. Riggi and Joseph A. Riggi, 2d, who together then owned 1,001 shares of the common stock of the corporation. There were outstanding 1,500 shares of common stock and 10 shares of preferred stock.

Section 16 of the Stock Corporation Law of New York (Consol. Laws, c. 59) in force at the time provided that:

"Power to borrow money and mortgage property. 1. Every stock corporation other than a moneyed corporation shall have the power to borrow money and contract debts, when necessary for the transaction of its business, or for the exercise of its corporate rights, privileges or franchises, or for any other lawful purpose of its incorporation; and it may issue and dispose of its obligations for any amount so borrowed, and may mortgage its property and franchises to secure the payment of such obligations, or of any debt contracted for such purposes. The consent to the execution of such mortgage, except a purchase-money mortgage, by the holders of not less than two-thirds of the total number of shares outstanding entitled to vote thereon, given either in writing, or by vote at a meeting of the stockholders called for that purpose in the manner prescribed by section forty-five, shall be required. A certificate that such consent was given by the stockholders in writing, or that it was given by vote at a meeting as aforesaid, shall be subscribed, acknowledged and verified by the president or a vice-president and by the secretary or an assistant secretary of the corporation, and shall be filed and recorded in the office of the recording officer of each county within the state in which the mortgage is filed or recorded, or, if no part of the mortgaged property be located within the state, in the office of the clerk of the county wherein the office of the corporation is located. * * *"

The affidavit attached to the mortgage was executed by Joseph A. Riggi, "Director and Agent Mortgagor," and by Harvey T. Rutter, "Director and Treasurer of Mortgagee," and set forth that " * * * the foregoing mortgage is made for the purpose of securing the debts specified in the condition thereof, and for no other purpose whatever, and that the same are just debts honestly due and owing, and to become due, from the mortgagor to the mortgagee, as Trustee."

At the time, sections 2788, 2789, and 2790 of the General Laws of Vermont provided as follows:

"Sec. 2788. Affidavit required of parties; form. A mortgagor and mortgagee, or, in the absence of the mortgagee, his agent or attorney, shall make and subscribe an affidavit in substance as follows:

"'We severally swear that the foregoing mortgage is made for the purpose of securing the debt specified in the conditions thereof, and for no other purpose, and that the same is a just debt, due and owing from the mortgagor to the mortgagee.'

"Such affidavit with the certificate of the oath signed by the authority administering the same shall be appended to such mortgage, and recorded therewith.

"Sec. 2789. Affidavit, when corporation is party. When a corporation is a party to such mortgage, the affidavit required may be made and subscribed by a director, trustee, cashier or treasurer thereof, or by a person authorized on the part of such corporation to make or receive such mortgage; when a partnership is a party to the mortgage, the affidavit may be made and subscribed by one member thereof.

"Sec. 2790. Contract of indemnity to be specifically set forth. If such mortgage is given to indemnify the mortgagee against liability assumed, or to secure the fulfillment of an agreement other than the payment of a debt due from the mortgagor to the mortgagee, or given to a trustee to secure bonds issued or to be issued thereunder, such liability, agreement or obligation shall be stated specifically in the condition of the mortgage; and the affidavit shall be so varied as to verify the validity and justice of such liability, agreement or obligation."

Low & Low, of New York City (Carroll Blakely Low and Henry Hoelljes, both of New York City, of counsel), for appellants.

Guy M. Page, of Burlington, Vt., for Henry Todd, trustee.

J. H. Macomber, Jr., of Burlington, Vt., for City Trust Co., trustee, Chittenden County Trust Co., and Howard Nat. Bank.

Before L. HAND, CHASE, and MACK, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

■ The approval of this compromise settlement is not to be tested wholly by what may now be thought would have been the result of litigation to settle the respective claims of the parties. It is certain that litigation for that purpose would have been the inevitable result of a failure to compromise and equally certain that it would have made for delay and expense. This should be kept in mind in reviewing the approval of the compromise. Petition of Stuart (C. C. A.) 272 F. 938–941. Coupled with the certainty of litigation was the uncertainty of its result and the soundness of the exercise of discretion in approving it largely depends upon how substantial was this element of uncertainty. The action of the District Court is presumptively right, and will not be set aside unless clearly shown to have been wrong. Pullman Couch Co. v. Eshelman (C. C. A.) 1 F.(2d) 885, 887, 888. Consequently, we shall make no attempt to decide with exactness what would have been the outcome had no settlement been made and approved. Any virtue which may reside in a compromise is based on doing away with the effect of such a decision. For present purposes it is enough to consider only what was reasonably to be expected to happen had no agreement been made.

■ The description in the mortgage appears to be clearly sufficient. See First National Bank of Chelsea v. Fitts, 67 Vt. 57, 30 A. 697; Symes v. Fletcher, 95 Vt. 431, 115 A. 502; Wells v. Blodgett, 92 Vt. 330, 104 A. 146; Niles v. Fuller, 101 Vt. 471, 144 A. 375. The condition of the mortgage set forth that it was given to secure one of the notes payable in terms to the mortgagee as trustee and to secure the payment of the two other notes to the mortgagee as trustee for the holders of those notes. In view of this, the affidavit was probably sufficient as a substantial compliance with the statute. Enright & Fitch v. Amsden, 70 Vt. 183–188, 40 A. 37. Besides, the mortgagee actually took possession of the mortgaged property before the petition in bankruptcy was filed. In Vermont, the mortgage then became good at common law and related back to the time of its execution. Bean v. Parker, 89 Vt. 532–540, 96 A. 17, and cases there cited. See, also, Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 25 S. Ct. 567, 49 L. Ed. 956. All this made any advantage the trustee in bankruptcy could have gained through a preservation of the liens of attaching creditors, to say the least, problematical, and made an attack on the mortgage by way of the affidavit hardly to be thought worth while.

■ There was no formal vote or written consent by stockholders to the execution of the

mortgage as required by the New York law, but the holders of at least two-thirds of the outstanding common stock did actually consent to its execution. If the ten shares of preferred stock could be ignored, there was good reason to believe that the mortgage could have been enforced without showing strict compliance with the statute. Black v. Ellis, 129 App. Div. 140, 113 N. Y. S. 558; In re Constantine Tobacco Co. (C. C. A.) 290 F. 128; Karasik v. People's Trust Co. (D. C.) 252 F. 324. The certificate of incorporation of the bankrupt provided that "the holders of the preferred stock shall have no right to vote * * * on any question involving the management of the corporation." The certificate issued for the ten shares contained a like provision. The giving of a mortgage to provide funds for operation is so plainly an act of management, Cunningham v. German Insurance Bank (C. C. A.) 101 F. 977, that this limitation on the right to vote could be said to exclude the holders of preferred stock, were it not for the fact that on May 3, 1926, when the mortgage was executed, section 51 of the New York Stock Corporation Law (Consol. Laws, c. 59) provided that, unless specifically excluded by the certificate of incorporation or other certificate from the right to vote in a proceeding for mortgaging property, all shares of stock should be entitled to vote. Yet, if the claim of the mortgagee that the preferred stockholders, by being specifically excluded by the certificate from voting on questions of management, were thereby specifically excluded from voting on the execution of a mortgage, cannot be sustained, there is a doubt whether by a general act of the Legislature, passed, as section 51 was, after the voting rights of common and preferred stockholders had been fixed and stock issued on that basis, the common stockholders can be compelled to share their hitherto exclusive right to vote on matters of management with preferred stockholders, who would thus be presented at the expense of the common stockholders with voting rights they did not acquire when they obtained their stock.

Moreover, we are dealing with a New York corporation doing business in Vermont and with a mortgage it gave in Vermont on property wholly located therein. Vermont had no statute similar to the New York law requiring consent of stockholders to a mortgage. At the time section 5008 of the Vermont General Laws indicated the policy that state had adopted toward transactions by foreign corporations doing business therein.

"Sec. 5008. Unauthorized transactions. If an act is done in this state in behalf of a foreign corporation and such act is authorized by the board of directors, or similar officers, or such act is done within the scope of authority given by such board, such act shall, provided that a corporation with authority to do such act might at the time such act was done have been formed under the laws of this state, be regarded as the act of the corporation and the corporation shall be liable therefor, even if such act was not necessary or proper to accomplish its purposes, to the same extent that it would have been liable for such act, had it been so necessary or proper."

We do not decide what effect, if any, this Vermont statute would have had on the validity of the mortgage. It is quite enough now to know that the trustee would have met with serious opposition in trying to free the property from the mortgage lien. While he might, perhaps, have succeeded, the nature of the legal problems involved was such that the expense, delay, and likelihood of failure may well have made a compromise settlement advisable. The District Judge thought so, found that the settlement was beneficial to all the creditors, and we cannot say on the record before us that he was wrong.

Order affirmed.