In re ASSOCIATED GAS & ELECTRIC CO.

In re ASSOCIATED GAS & ELECTRIC CORPORATION.

District Court, S. D. New York.

Nov. 22, 1943.

See, also, 53 F.Supp. 107.

Lewis M. Dabney, Jr., of New York City, for Trustee of Associated Gas & Electric Co.

Allen E. Throop and O. John Rogge, both of New York City (Allen E. Throop, O. John Rogge, and William W. Golub, all of New York City, of counsel), for Trustees of Associated Gas & Electric Corporation.

George Zolotar, of New York City (Morton E. Yohalem, of New York City, of counsel), for Securities and Exchange Commission.

Scribner & Miller, of New York City, for Agecorp 1973 Debenture Holders Committee.

Glass & Lynch, of New York City, for Empire Trust Co., successor Trustee for Agecorp 1973 Debentures.

Ralph Montgomery Arkush, of New York City, for Agecorp 1978 Debenture Holders Committee.

Cullen & Dykman, of Brooklyn, N.Y. (Charles E. Scribner, Ralph Montgomery Arkush, and Leslie Kirsch, all of New York City, and Ralph W. Crolly, of Brooklyn, N. Y., of counsel), for Brooklyn Trust Co., successor Trustee for Agecorp 1978 Debentures.

Hays, Wolf, Schwabacher, Sklar & Epstein, of New York City, for Agecorp 8s of '40 Debenture Holders Committee.

Jack Lewis Krauss, II, of New York City, for General Protective Committee.

Kelsey, Waldrop & Spalding, of New York City, for Colonial Trust Co., successor Indenture Trustee of the 1986 Sinking Fund Income Debentures of Associated Gas & Electric Company.

LEIBELL, District Judge.

On September 3, 1943, the Hon. Frederick E. Crane, Special Master, filed his report in the office of the Clerk of the Court in which he set forth his opinion and his findings of fact and conclusions of law with respect to the fairness and reasonableness of a plan for the compromise of certain litigation in which he had sat as Special Master. The Special Master's report on the plan of compromise was noticed for a hearing in the bankruptcy motion part for September 15, 1943. It was adjourned to October 8, 1943, and referred to me for my consideration. On October 8th I heard the arguments made on behalf of various committees and trustees directed to the question of whether the Court should defer its consideration of the Special Master's report on the plan of compromise until the Securities and Exchange Commission had expressed its approval or disapproval of a certain plan of reorganization of Associated Gas and Electric Company and Associated Gas and Electric Corporation, filed with the Commission on June 14, 1943, under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq.

The plan of compromise covers two proceedings: The so-called Recap litigation in the Agecorp proceeding, and the CDC litigation in the Ageco proceeding. The so-called Recap litigation was referred to the Special Master on July 26, 1941, and the hearings occupied the better part of a year, between September 1941 and September 1942. Some 12,000 pages of testimony were taken and more than 700 exhibits were introduced. In those proceedings the Ageco trustee claimed, on behalf of Ageco security holders, that all of the assets held by Agecorp were subject to a prior lien or claim of Ageco and its security holders, or were assets in which the Ageco security holders should share.

At the time the Chapter X proceedings were instituted on January 10, 1940, Age-

corp had outstanding about $8,000,000 of 8% bonds due 1940, known as the 8s of '40; also $24,000,000 of debentures due 1973 and $139,000,000 of debentures due 1978. Ageco had outstanding about $59,-000,000 of fixed interest debentures; about $1,250,000 of Sinking Fund Income Debentures due 1983; about $7,000,000 of Sinking Fund Debentures due 1986; about $3,-800,000 principal amount of Convertible Debenture Certificates and $20,000,000 principal amount of Convertible Obligations due 2002; together with convertible certificates without fixed maturity; convertible obligations without fixed maturity; interest bearing scrip; non-interest bearing scrip and issues of stock and junior securities. The principal asset of Ageco was all the common stock of Agecorp according to the records. Agecorp in turn appeared to be the owner of various subsidiary holding companies selling electricity, gas, light, power, ice and services of many types, including transportation and ferry companies, through numerous operating companies.

In the Recap litigation the trustee of Ageco and the committees representing security holders of Ageco contended that all of the operating companies, which according to the books were owned by subsidiaries of Agecorp, were in fact the property of Ageco and had been unlawfully and fraudulently transferred to Agecorp by the Hopson management.

On October 27, 1942, I also referred to the Special Master proofs of claim filed in the Ageco proceedings by holders of convertible debenture certificates, original holders of convertible obligations and preferred stock, and holders of other convertible obligations, convertible certificates, interest bearing scrip and non-interest bearing scrip. The proceeding in relation to the claims of these security holders was known as the CDC litigation. Objections had been filed to these classes of claims and the principal question presented was whether the claims filed were subordinate to the fixed interest bonds of Ageco.

The Special Master filed his report on the CDC litigation on March 30, 1943, and submitted findings of fact and conclusions of law. His report was divided into three parts. To the findings of the second and third parts there was no objection. The first part of the report dealing with the "Classification of the Claims of Convertible Debenture Certificates, Convertible Debenture Obligations, Convertible Certificates, Convertible Obligations Without Fixed Maturity, Convertible Obligations Series A and B, Due 2002, Interest and Non-Interest Bearing Scrip due 1941, 1942, 1944 and 1947 and others," did present some issues. The trustee of Ageco moved to confirm the first part of the Special Master's report in so far as it classified certain claimants, who under the proposed settlement of the Recap and CDC litigation, would not participate in any distribution of the assets of Ageco or Agecorp. The trustee's motion was opposed. After hearing argument and receiving briefs I filed my opinion on July 30, 1943, granting the trustee's motion. 53 F.Supp. 107.

In that opinion I referred to the Recap litigation, to the plan of compromise, to the plan of reorganization and to the Special Master's report in the CDC litigation. I stated that "the plan of reorganization, among other things, gives effect to the terms of the plan of compromise of the Recap litigation hereinabove mentioned. The plan of compromise appears to be the backbone of the reorganization setup." I did not pass upon certain other claims in the CDC litigation, because they would be taken care of by the proposed settlement. If the plan of compromise is finally approved there will be no need to pass upon the legal merits of those claims.

To return to the plan of compromise to which the present motion relates: In his report on the proposed plan of compromise of the rival claims of Ageco and Agecorp and their security holders, the Special Master states that the plan "recognizes that the contentions which have been raised in the litigation as to the validity or priority of some of these bonds makes desirable a settlement, if possible, and I may say here that all the parties appearing before me agree that a settlement is very desirable". The report also states: "When we consider how the assets of these companies were shifted about at the will of one man, and how the corporate formalities or entities were disregarded, it seems fair, if possible, to set aside the Recap Plan and permit these Ageco and Agecorp bondholders to share in the assets on a parity. I say if possible, for I am not deciding that possibility—I am presenting views legal and equitable, which force one to the conclusion that this corporate mess should be straightened out as soon as possible, and that a compromise is the best way to do it."

The Special Master in passing upon the fairness of the plan of compromise briefly reviewed "the nature of the bonds issued by both corporations and the strength or weakness of the positions taken by the respective classes of bondholders, in other words, the likelihood or possibility of victory or defeat if the litigation goes to a final judicial determination." The concluding pages of his report contain the following paragraphs:

"When we consider all the matters to which I have heretofore referred, the perplexity of the situation and of the corporate setup, the difficulty in arriving at the facts and the truth, the different opinions that may be formed on the evidence and of the law applicable to the facts, together with the expense of further protracted litigation, the proposition here set before all these objecting security holders, including the 8s of '40, seems to me fair and reasonable and in every way desirable. Unfortunate indeed would it be to everyone if a settlement of this Associated Gas and Electric disorganization could not be accomplished and reorganization speeded on its way."

"No report or opinion would be complete or respected if it did not comply with the American judicial habit of citing authorities. The opinions in Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, [61 S.Ct. 904, 85 L.Ed. 1293]; Taylor v. Standard Gas & E. Co., 306 U.S. 307 [59 S.Ct. 543, 83 L.Ed. 669]; Pepper v. Litton, 308 U.S. 295 [60 S.Ct. 238, 84 L.Ed. 281], have been very helpful in their breadth of view, while In re Riggi Brothers Co. [2 Cir.], 42 F.2d 174 [176], certiorari denied [Wood & Selick v. Todd], 282 U.S. 881 [51 S.Ct. 85, 75 L.Ed. 777], and In re Prudence Co., [2 Cir.], 98 F.2d 559, have explained my duty in passing upon the fairness of a proposed plan of compromise or settlement. In the former it was said, 'Coupled with the certainty of litigation was the uncertainty of its result and the soundness of the exercise of discretion in approving it largely depends upon how substantial was this element of uncertainty. * * * For present purposes it is enough to consider only what was reasonably to be expected to happen had no agreement been made.' And in the latter case it was written, 'The very purpose of a compromise is to avoid the determination of sharply contested and dubious issues, as this court pointed out in the case of In re Riggi Bros. Co., 2 Cir. 42 F.2d 174, 176.'"

"Therefore, I report to the Court that, in my judgment, this proposed compromise of the Recap litigation and related issues is fair and reasonable, and should be approved."

The committees representing the Agecorp debentures of '73 and '78 urge that this Court should determine the issues raised by the objections filed by them to the Special Master's report on the plan of compromise prior to any determination by the Securities and Exchange Commission in the proceeding before the Commission in relation to the plan for the reorganization of Ageco and Agecorp. The attorneys for the trustees of Ageco and Agecorp took the same position on the argument on October 8th and on October 25th, because they thought that it would save time and hasten the termination of these proceedings.

The plan of compromise, which was the subject of the Special Master's report filed September 3, 1943, had as its objective a fair settlement of the controversies in the Recap litigation and also of some of the controversies in the CDC litigation. In so far as the compromise relates to the Recap litigation it provides for a pooling of the assets of both estates and the allowance of the claims of various types of security holders of both estates in certain specified ratios, with priority to the 8s of '40.

The Special Master in Findings 13 and 14 of his report sets forth the participation of various securities in the joint assets, as follows:

"13. The proposed compromise encompasses all the controversies involved in the Recap Litigation and the issues in the CDC Litigation relating to the holders of CDCs and Original Holders of COs and Preferred Stocks. It also fixes the basis of participation for persons referred to in Finding of Fact 11 who establish their right to be treated as unsubordinated creditors of either the Ageco or Agecorp estate. No provision is made for holders of securities referred to in the first paragraph of Finding of Fact 6.

"14. Under the proposed compromise, the claims of holders of 8s of '40 are settled by the allowance to them of claims, in the amounts set forth in paragraph I of Appendix A, which are to have priority over the claims allowed to other security holders and creditors of Ageco and Agecorp covered by the compromise. The

claims of the other security holders of Ageco and Agecorp are settled by the allowance of claims, in the amounts set forth in paragraph II of the Appendix A, which bear the following average percentage ratios to the claims allowed to holders of Ageco' Debentures, taking the latter at 100%:

| Security | Percentage Ratio |
|---|---|
| 73s | 257.6% |
| 78s | 117.6% |
| Ageco Debentures | 100.0% |
| 5% Income Debentures due 1983 | 100.0% |
| SFIDs of '83 | 79.6% |
| SFIDs of '86 | 76.7% |
| CDCs | 40.4% |
| Original Holders of COs and Preferred Stocks | 20.2% |

"The claims allowed to the holders of the various series within each class of securities, vary to some extent because of the different dates at which interest was last paid on the securities and the different interest rates which the securities bear."

Finding of Fact 11 and the first paragraph of Finding of Fact 6, referred to in the above quoted findings, read as follows:

"11. A number of proofs of claim, which are not claims to enforce securities according to their terms, have been filed in the Ageco and Agecorp proceedings by persons asserting that they are entitled to be treated as unsubordinated creditors of either the Ageco or Agecorp estate. On June 21, 1943, Judge Leibell referred those claims, which are relatively insignificant in amount, to a referee in bankruptcy."

"6. The following securities of Ageco are also now outstanding: Convertible Obligations Due 2002 (other than those referred to in Finding of Fact 5), Convertible Certificates without fixed maturities, Convertible Obligations without fixed maturities, Interest Bearing Scrip, and Non-interest Bearing Scrip."

The plan of reorganization filed with the Securities and Exchange Commission, in Article II thereof, deals with "Treatment of Various Classes of Liabilities, Claims and Securities Under the Plan". Paragraph 6 states: "6. Other Participating Securities and General Claims. Holders of other Participating Securities and General Claims shall be entitled to receive shares of New Common Stock proportionate to the amounts of their claims as recognized by the Recap Compromise. The fol-

lowing table shows the number of shares of New Common Stock to be issued for each $100 of principal and all rights to interest thereon (or each share of stock and dividends thereon as the case may be), to the effective date of the Plan:" Immediately following said paragraph is a list of the various participating securities and the number of shares of new common stock of the resulting corporation to which each $100 worth of principal of security would be entitled. This allotment states in terms of shares of new common stock the same percentages for the respective securities as are set forth in the above quoted finding of fact 14 from Judge Crane's report on the plan of compromise.

According to the brief of the attorney for the Trustees of Agecorp, a question was raised by some of the Committees at the hearing before the examiner of the Securities and Exchange Commission on the plan of reorganization, as to the power of the commission in considering said plan to examine into the merits of the Recap compromise, even for the limited purpose of making a preliminary determination of its fairness. The attorney for the trustees of Agecorp agreed that the Commission might appropriately consider it "in the absence of a judicial determination of the merits of the Recap compromise". It appears to be the object of those who now request the Court to pass immediately upon the merits of the plan of compromise to obtain an adjudication of the Court that would bind the Commission in any consideration it may give to the plan of compromise while deciding the merits of the plan of reorganization.

■ It seems clear that the procedure provided in Section 11f of the Public Utility Holding Company Act of 1935 requires that a plan for the reorganization of a registered public utility holding company, such as Ageco and Agecorp, should be formally submitted to the Commission for its approval prior to its submission to the Court in which the Chapter X bankruptcy proceeding is pending. There is nothing in either statute that would prevent the Court from considering informally the plan of reorganization while it is still before the Commission.

■ In the course of the oral argument before me a question was raised as to the authority of the Court to consider the plan of compromise of the Recap and the CDC litigation prior to the determination of the

Commission on the plan of reorganization, on the assumption that the plan of compromise is in fact a plan of reorganization. Although it is true that the plan of compromise is the backbone of the plan of reorganization, it is not itself a plan of reorganization in these Chapter X proceedings. It does not contain the essentials of § 216 of the Bankruptcy Act. The plan of reorganization submitted to the Securities and Exchange Commission by the Trustees of Ageco and Agecorp, in addition to recognizing claims of security holders in the rank and ratio provided in the plan of compromise, includes many other matters, some of which relate to other claims which have been the subject of this Court's orders, such as the Ageco scrip and the UESCo settlement. The provisions of Section 11(f) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k(f), would not prevent or bar this Court from ruling upon the Special Master's report on the plan of compromise at any time, either before or after the Commission renders its decision on the merits of the plan of reorganization.

The plan of compromise may be considered by the Court under Section 27 of the Bankruptcy Act, 11 U.S.C.A. § 50: "Sec. 27. Compromises. The receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate."

■ Further, Rule 23 of the F.R.C.P., 28 U.S.C.A. following section 723c, which outlines the procedural machinery for the settlement of class suits, would also apply to this settlement. The Federal Rules of Civil Procedure insofar as they are not inconsistent with the Bankruptcy Act or with the general orders in bankruptcy must be followed as nearly as may be in proceedings under the Bankruptcy Act. General Order 37, 11 U.S.C.A. following section 53. That the plan of compromise is within the powers of the Bankruptcy Court is clear also from the decided cases, in particular: in Petition of Stuart, 6 Cir., 272 F. 938; In re National Public Service Corp., 2 Cir., 68 F.2d 859; In re Paley, D.C., 26 F.Supp. 952, and American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., 2 Cir., 122 F.2d 454. In the latter case the Court referred to part of the opinion of Mr. Justice Douglas in the case of Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 14, 84 L.Ed. 110, from which the following quotation was taken: "There frequently will be situations involving conflicting claims to specific assets which may, in the discretion of the court, be more wisely settled by compromise rather than by litigation."

■ The Securities and Exchange Commission is a party to this Chapter X proceeding, the Commission having formally filed its notice of appearance on January 15, 1940, pursuant to § 208 of the Bankruptcy Act, 11 U.S.C.A. § 608. It would be entitled to be heard on any motion to confirm, reject or modify the Special Master's report on the plan of compromise of the Recap and CDC litigation.

■ This Court has original and sole jurisdiction to pass upon the fairness of the plan of compromise, as such. Further, if this Court were to pass upon the plan of compromise and approve the Special Master's report, holding it a fair, equitable and desirable settlement, the judicial determination of this Court to that effect would be binding upon the Securities and Exchange Commission in its consideration of any plan of reorganization which, in part, might give effect to the terms of the plan of compromise.

■ But there are other considerations to be weighed apart from the question of jurisdiction, in deciding the present application. The attorney for the Trustees of Agecorp in his reply brief makes a point which appeals to the Court's idea of judicial husbandry. He states: "Counsel will unquestionably desire to address themselves to the Commission's opinion when it is available. If it were possible to cover both that opinion and the Special Master's report at the same time, therefore, the necessity for two sets of briefs and two oral arguments before this Court could be averted. What is more, the Commission's opinion, which would be based upon the briefs and argument of counsel in the administrative proceeding, might well serve to sharpen the issues with respect to the fairness of the Recap Compromise." He suggests that the Court reserve its decision on the present motion until January 15, 1944, by which time according to the memorandum of the Commission's counsel we may reasonably expect a decision by the Commission on the plan of reorganization.

Further, administrative bodies and the court supplement and aid each other's

work and should be inspired by an equal respect for orderly procedure, so necessary to the proper performance of their respective duties. In the present case I see no reason why I should not wait and obtain the benefit of the Commission's considered views on the plan of compromise, in the opinion which the Commission is expected to file about the middle of January on the plan of reorganization of Ageco and Agecorp. In fact, to do otherwise, considering the special circumstances here presented, might lead to complications and would be a disservice to those whose interests we are obliged to protect, the security holders themselves. If the plan of reorganization is approved by the Commission and later by the Court, it will be submitted to the security holders and creditors of both Ageco and Agecorp for their approval pursuant to the provisions of § 175 of the Bankruptcy Act, 11 U.S.C.A. § 575.

I am therefore of the opinion that the most expeditious and sensible procedure for the Court to follow would be to have the questions relating to the approval of the plan of compromise and the approval of the plan of reorganization argued and briefed by counsel at one end the same time, and that the Court then determine the issues thus presented.